[No. H027808. Sixth Dist. Aug. 26, 2005.]

YAN GU, Plaintiff and Appellant, v.
BMW OF NORTH AMERICA, LLC, Defendant and Respondent.

---

**COUNSEL**

Walkup, Melodia, Kelly, Wecht, Schoenberger, Ronald H. Wecht, Khaldoun A. Baghdadi; Law Offices of Ted W. Pelletier and Ted W. Pelletier for Plaintiff and Appellant.

Carroll, Burdick & McDonough and David S. Killoran for Defendant and Respondent.

---

**OPINION**

**BAMATTRE-MANOUKIAN, Acting P. J.—**

## I. INTRODUCTION

In this appeal we consider a claim for negligent infliction of emotional distress arising from a fatal accident involving a 1999 BMW 328i convertible that appellant Yan Gu (Yan) had purchased from respondent BMW of North America, LLC (BMW), a distributor of BMW motor vehicles. At the time of the accident, Yan's sister Ling Gu (Ling) was driving the BMW convertible with their parents as passengers. Ling sustained fatal head injuries due to the vehicle's allegedly defective head protection system. The parents were injured in the accident but survived. Yan was not a passenger in the vehicle and she did not witness the accident.

Nevertheless, Yan has asserted a cause of action against BMW for negligent infliction of emotional distress, in which she claims that she suffered emotional distress as the direct victim of BMW's negligence in failing to use due care in the design and manufacture of the vehicle's head protection system. BMW demurred on the ground that the complaint failed to state facts sufficient for a claim of negligent infliction of emotional distress because Yan was not a bystander who witnessed the injury-producing event. The trial court sustained the demurrer without leave to amend. Thereafter, a judgment of dismissal was entered as to Yan, because negligent infliction of emotional distress was her only cause of action. Yan appeals.

Yan acknowledges that no California appellate court has considered the issue of whether a claim for negligent infliction of emotional distress may be stated by the owner of a defective product, where the product caused injury to the owner's close family member but the owner did not witness the injury-producing event. For the reasons explained, *post*, we conclude that BMW owed no duty to Yan that would allow her to recover for emotional distress on the theory that she, as the owner of the vehicle, is the direct victim of BMW's alleged negligence, and we will affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In reviewing the propriety of the trial court order sustaining BMW's demurrer we accept as true all factual allegations properly pleaded in the complaint. (See *Construction Protective Services, Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 193 [126 Cal.Rptr.2d 908, 57 P.3d 372]; *Cryolife, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1145, 1152 [2 Cal.Rptr.3d 396].) Accordingly, our summary of the facts is drawn from the material allegations in the complaint filed in the wrongful death action brought by Yan and the parents of Ling and Yan, Guang Gu and Guo Zhen Feng, against defendants BMW, BMW Holding Corp., Bayerische Moteren Werke Aktiengesellschaft, and Claridge's BMW.[1]

### A. *The Complaint*

At all relevant times, defendant BMW was in the business of importing, distributing, marketing, and selling motor vehicles to the American public, including the 1999 BMW 328i convertible purchased by plaintiff Yan. On November 2, 2002, Yan's sister Ling was driving the BMW convertible on Highway 280 with their parents, plaintiffs Guang Gu and Guo Zhen Feng, as passengers. Ling lost control of the vehicle, which resulted in the vehicle "leaving the highway and colliding with a pole and a tree." Ling sustained facial and head injuries in the accident and died six days later, on November 8, 2002. The complaint does not allege that Yan was a passenger or that she witnessed the accident.

The complaint further alleges that the BMW convertible was defective because it did not provide the "occupant protection" expected by an ordinary consumer when the vehicle is involved in a foreseeable collision. Specifically, as a result of the design and manufacturing defects in the head protection system, Ling was not protected from injury in a side-impact collision. Instead, the defects exacerbated her injuries and caused her death. Based on these factual allegations, Ling's parents, plaintiffs Guang Gu and Guo Zhen

---

[1] Only BMW is a party to this appeal.

Feng, have asserted causes of action for strict liability (design defect), strict liability (manufacturing defect), failure to warn, negligence, breach of warranty, and negligent infliction of emotional distress. Additionally, Guo Zhen Feng has asserted a survival cause of action pursuant to Code of Civil Procedure sections 377.60 and 377.32, as the personal representative of Ling's estate.

The complaint also includes Yan's cause of action for negligent infliction of emotional distress, which is based on the following allegations. Yan purchased the BMW convertible because she had a particular interest in purchasing a safe vehicle. She was influenced by defendant's "apparent and actual authority and guarantees concerning the safety of the vehicle." Yan suffered severe emotional distress as the result of her sister Ling's death in the accident involving Yan's defective BMW convertible. She claims that BMW is liable for negligent infliction of emotional distress, because her emotional distress was caused by BMW's breach of its "duty to market and sell her a vehicle which provided adequate safety to its purchaser and foreseeable users."

### B. *The Demurrer*

BMW demurred to the complaint, asserting that Yan had failed to plead sufficient facts to state a cause of action for negligent infliction of emotional distress. BMW also demurred to the cause of action for breach of warranty on the ground of insufficient facts and to the allegations regarding " 'the vehicle's head protection system' " on the ground of uncertainty. Only the demurrer to Yan's cause of action for negligent infliction of emotional distress is at issue in the present appeal.

Regarding Yan's claim, BMW argued that the factual allegations were insufficient to state a cause of action for negligent infliction of emotional distress because Yan failed to allege that she had witnessed the accident. Relying on *Dillon v. Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912], BMW contended that a claim of emotional distress based on an injury to a third party is not allowed under California law unless the plaintiff witnessed a physical injury to a close relative.

In her opposition to the demurrer, Yan acknowledged that the complaint did not allege that she had witnessed or otherwise perceived the accident. However, Yan argued that it was sufficient to allege that she was the direct victim of BMW's breach of its duty to her, as the purchaser of the BMW convertible, to use reasonable care in the vehicle's manufacture, design, and assembly. Yan also argued that it was foreseeable that "the purchaser of one of its vehicles would suffer emotional injury if that vehicle malfunctioned and

killed the purchaser's family member." BMW replied that there was no authority to support Yan's contention that the seller of a defective vehicle is liable to the vehicle's owner for negligent infliction of emotional distress where the owner did not witness the accident involving the vehicle.

## C. *The Trial Court's Order*

The trial court sustained BMW's demurrer to Yan's cause of action for negligent infliction of emotional distress without leave to amend for two reasons. Citing *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965 [25 Cal.Rptr.2d 550, 863 P.2d 795] and *Lawson v. Management Activities, Inc.* (1999) 69 Cal.App.4th 652 [81 Cal.Rptr.2d 745], the trial court first noted that the California Supreme Court had ruled that there is "no such thing as the independent tort of negligent infliction of emotional distress." Second, the trial court determined that "under general negligence principles, . . . no duty extends from defendant [BMW] to plaintiff [Yan] for emotional distress inherent in any vehicular accident."

At the hearing on the demurrer, the trial court announced its ruling and asked if Yan wanted leave to amend the complaint. Yan's attorney declined, stating, "No, your Honor; I don't think there is anything that would change those facts."

## III. DISCUSSION

### A. *Appealability*

Yan's notice of appeal states that she appeals from the order sustaining the demurrer without leave to amend, filed May 6, 2004, which is not an appealable order. (See *Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1032, fn. 1 [134 Cal.Rptr.2d 260].) Yan urges this court to liberally construe the notice of appeal as properly seeking review of the judgment of dismissal, filed June 7, 2004, which is attached to the notice of appeal.

■ The California Supreme Court has instructed that a notice of appeal " ' "shall be liberally construed in favor of its sufficiency." ' " (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 20 [23 Cal.Rptr.3d 490, 104 P.3d 844], quoting *Vibert v. Berger* (1966) 64 Cal.2d 65, 67 [48 Cal.Rptr. 886, 410 P.2d 390].) Therefore, where it is "reasonably clear that the appellant intended to appeal from the judgment and the respondent would not be misled or prejudiced," the notice of appeal may be interpreted to apply to an existing judgment. (*Walker v. Los Angeles County Metropolitan Transportation Authority*, *supra*, 35 Cal.4th at pp. 20, 22.)

We will interpret Yan's notice of appeal as applying to the judgment of dismissal. It is clear that Yan intended to appeal from the judgment and that no prejudice would result to respondent BMW. BMW has argued the merits of the appeal and has not sought dismissal.

### B. *Standard of Review*

■ The California Supreme Court has articulated the applicable standard of review: "When reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied factual allegations. [Citation.] Courts must also consider judicially noticed matters.[2] [Citation.] In addition, we give the complaint a reasonable interpretation, and read it in context. [Citation.] If the trial court has sustained the demurrer, we determine whether the complaint states facts sufficient to state a cause of action. If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].)

### C. *Yan's Cause of Action for Negligent Infliction of Emotional Distress*

Yan asserts that her claim for negligent infliction of emotional distress is valid under existing California Supreme Court authority regarding the right to recover emotional distress damages as a direct victim of the defendant's negligence. BMW, on the other hand, contends that allowing a claim for negligent infliction of emotional distress under these facts would constitute an unprecedented expansion of tort liability. The California Supreme Court has established the elements of a valid claim for negligent infliction of emotional distress, which govern our determination of whether Yan has stated facts sufficient to maintain her claim.

---

[2] We granted BMW's request to take judicial notice of a notice of proposed rulemaking of the National Highway Safety Administration (69 Fed.Reg. 27990 (May 17, 2004)), and the related rulemaking docket. However, we observe that these documents were not presented to the trial court in the proceedings below. Although a reviewing court may take judicial notice of documents not before the trial court (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261]), we do not believe it would be proper to consider these documents as BMW did not submit them to the trial court.

## 1. *Recovery for Negligent Infliction of Emotional Distress*

■ "The law of negligent infliction of emotional distress in California is typically analyzed . . . by reference to two 'theories' of recovery: the 'bystander' theory and the 'direct victim' theory." (*Burgess v. Superior* Court (1992) 2 Cal.4th 1064, 1071 [9 Cal.Rptr.2d 615, 831 P.2d 1197] (*Burgess*).) Under the bystander theory, the plaintiff seeks to recover damages for serious emotional distress suffered as a result of an injury to a close family member. Recovery is limited as a matter of public policy to those cases where the plaintiff was present at the scene of the injury-producing event and was aware that the event was causing injury to the victim. (*Id.* at pp. 1072–1073.)

In the present case, Yan concedes that she cannot state facts sufficient for a cause of action for negligent infliction of emotional distress based on a bystander theory, because she did not witness the accident in which her sister was fatally injured. Therefore, our task is to determine whether Yan has stated facts sufficient for a cause of action for negligent infliction of emotional distress based on a direct victim theory.

■ In its decisions addressing the direct victim theory, the California Supreme Court has emphasized that "there is no independent tort of negligent infliction of emotional distress." (*Potter v. Firestone Tire & Rubber Co., supra,* 6 Cal.4th 965, 984 (*Potter*); see *Burgess, supra,* 2 Cal.4th at p. 1072; *Christensen v. Superior Court* (1991) 54 Cal.3d 868, 884 [2 Cal.Rptr.2d 79, 820 P.2d 181]; *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 588 [257 Cal.Rptr. 98, 770 P.2d 278].) Instead, "[t]he tort is negligence, a cause of action in which duty to the plaintiff is an essential element." (*Potter, supra,* 6 Cal.4th at p. 984.)

However, "there is no duty to avoid negligently causing emotional distress to another . . . ." (*Potter, supra,* 6 Cal.4th at p. 984.) Thus, "unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty." (*Id.* at p. 985; see *Erlich v. Menezes* (1999) 21 Cal.4th 543, 555 [87 Cal.Rptr.2d 886, 981 P.2d 978].) A legal duty "may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." (*Potter, supra,* 6 Cal.4th at p. 985; see *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., supra,* 48 Cal.3d at p. 590.)

The decision in *Potter* is illustrative of a case involving a duty imposed by law. Landowners who lived adjacent to a landfill where the defendant tire manufacturer disposed of its toxic wastes claimed a fear of developing cancer

due to the toxic waste exposure. Our Supreme Court ruled that recovery of damages for negligent infliction of emotional distress engendered by fear of cancer is allowed where "the plaintiff pleads and proves that the fear stems from a knowledge, corroborated by reliable medical and scientific opinion, that it is more likely than not that the feared cancer will develop in the future due to toxic exposure." (*Potter, supra*, 6 Cal.4th at p. 974.) In so ruling, our Supreme Court emphasized that recovery of emotional distress damages was available because the plaintiffs' fear of cancer was proximately caused by the tire manufacturer's breach of its legal duty to properly dispose of toxic waste. (*Id.* at p. 985.)

Whether the defendant has assumed a duty that would give rise to a claim for negligent infliction of emotional distress if the duty is breached was addressed by the California Supreme Court in *Huggins v. Longs Drug Stores California, Inc.* (1993) 6 Cal.4th 124 [24 Cal.Rptr.2d 587, 862 P.2d 148] (*Huggins*). In that case, the appellate court had determined that "a pharmacist automatically assumes a duty of care toward a patient's closely related caregivers simply by filling a prescription with actual or constructive knowledge that the patient is an infant or otherwise helpless." (*Id.* at p. 130.) Our Supreme Court disagreed, ruling that a pharmacist assumes a duty of care only to the patient to whom he or she dispenses prescribed medication. (*Id.* at p. 133.) Accordingly, the court determined that the plaintiff parents, who overdosed their child by administering a negligently filled prescription, did not have a valid claim for negligent infliction of emotional distress because the negligent pharmacist owed no duty to them. (*Ibid.*)

A special relationship was the basis for finding a duty of care in *Burgess, supra*, 2 Cal.4th 1064. In *Burgess*, the plaintiff mother claimed damages for emotional distress suffered as a result of the defendant obstetrician's negligent delivery of her baby. (*Burgess, supra*, 2 Cal.4th at p. 1071.) Our Supreme Court determined that an obstetrician and a pregnant woman enter into a physician-patient relationship. Therefore, "[a]ny negligence during delivery which causes injury to the fetus and resultant emotional anguish to the mother . . . breaches a duty owed directly to the mother." (*Burgess, supra*, 2 Cal.4th at p. 1076.) Similarly, the court ruled in *Marlene F.* that the plaintiff mothers "stated a cause of action for . . . negligent infliction of emotional distress against the therapist who molested their sons in the course of a professional relationship involving both mother and son." (*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., supra*, 48 Cal.3d at p. 592.)

Having reviewed the California Supreme Court's decisions concerning the direct victim theory of negligent infliction of emotional distress, we turn to Yan's claim that she is entitled to recover emotional distress damages because she is the direct victim of BMW's alleged negligence in failing to use due care in the design and manufacture of her vehicle's head protection system.

### 2. *Yan's Direct Victim Claim*

Yan urges this court to recognize that "BMW owed Yan a duty not to cause her foreseeable emotional distress by selling her a negligently-designed car that (contrary to BMW's representations) was not safe and therefore contributed to injuring her parents and killing her sister." According to Yan, BMW's duty to her has two sources. First, BMW's duty arises from its special relationship with Yan. Second, BMW's duty is imposed under the laws of negligence. We will address each theory of duty separately.

#### a. *Duty Arising from a Special Relationship*

With respect to her special relationship theory of duty, Yan asserts that "BMW and Yan had a preexisting relationship that gave BMW a duty of care—Yan was a purchaser of BMW's product." We are not persuaded that BMW's relationship with Yan as the purchaser of a BMW automobile is sufficient to give rise to a duty of care to Yan under the facts of this case, for several reasons.

■ First, "[a] manufacturer/seller of a product is under a duty to exercise reasonable care in its design so that it can be safely used as intended by its buyer/consumer." (*Williams v. Beechnut Nutrition Corp.* (1986) 185 Cal.App.3d 135, 141 [229 Cal.Rptr. 605]; see also *Pike v. Frank G. Hough Co.* (1970) 2 Cal.3d 465, 470 [85 Cal.Rptr. 629, 467 P.2d 229].) "Similarly, '[the] manufacturer's duty of care extends to all persons within the range of potential danger.' " (*Williams v. Beechnut Nutrition Corp., supra,* 195 Cal.App.3d at p. 141, quoting *Pike v. Frank G. Hough Co., supra,* 2 Cal.3d at p. 473.)

Therefore, BMW's duty to use reasonable care in the design of a vehicle's head protection system extends to persons using the vehicle as intended, such as the driver and passengers, or to other persons within the range of potential danger from the vehicle. Since Yan concedes that she was neither driving her BMW convertible nor present at the time of the accident involving her family members (and thus she was outside the range of potential danger), BMW owed no manufacturer's or seller's duty of care to her. For the same reason, we reject Yan's alternative contention that BMW's duty arose because she was " 'using' the car in a foreseeable manner" by "lending it to her family because she believed that it was safe and would protect them." We believe that "lending" a vehicle for use by others does not constitute use of the vehicle for its intended purpose of transportation.

■ Second, to the extent Yan contends that a special relationship arose by virtue of the purchase agreement for her BMW convertible, we must reject

that contention. The California Supreme Court has explained that "when the express object of the contract is the mental and emotional well-being of one of the contracting parties, the breach of the contract may give rise to damages for mental suffering or emotional distress." (*Erlich v. Menezes, supra,* 21 Cal.4th 543, 559.) However, Yan has not alleged a breach of the purchase agreement, which, in any event, cannot be deemed a contract with her mental or emotional well-being as its express object. " '[A] contract for [the] sale of an automobile is not essentially tied to the buyer's mental or emotional well-being.' " (*Id.* at p. 560.) " 'Personal as the choice of a car may be, the central reason for buying one is usually transportation . . . .' " (*Ibid.,* quoting *Kwan v. Mercedes-Benz of North America* (1994) 23 Cal.App.4th 174, 190 [28 Cal.Rptr.2d 371].)

In contrast, we observe that the special relationships that our Supreme Court has deemed sufficient to give rise to a duty of care are clearly related to the plaintiff's mental or emotional well-being. Valid claims for negligent infliction of emotional distress have been found where the defendant breached the duty of care that arises in the physician-patient relationship (*Burgess, supra,* 2 Cal.4th at p. 1077; *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813]), as well as in the psychotherapist-patient relationship (*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., supra,* 48 Cal.3d at p. 592), and in the relationship between a mortuary and the close relatives of the decedent for whose benefit the mortuary was to provide funeral services (*Christensen v. Superior Court, supra,* 54 Cal.3d at pp. 890–891). In short, "[c]ases permitting recovery for emotional distress typically involve mental anguish stemming from more personal undertakings the traumatic results of which were unavoidable." (*Erlich v. Menezes, supra,* 21 Cal.4th at p. 559.)

Having determined that the allegations of Yan's complaint are insufficient to establish a special relationship with BMW from which a duty of care arose, we next consider whether BMW owed a duty imposed by law.

### b. *Duty Imposed by Law*

Yan contends that "[u]nder Civil Code section 1714,[3] BMW owed Yan a duty not to cause her emotional distress [and] that duty applies unless

---

[3] Civil Code section 1714, subdivision (a), provides, "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself. The design, distribution, or marketing of firearms and ammunition is not exempt from the duty to use ordinary care and skill that is required by this section. The extent of liability in these cases is defined by the Title on Compensatory Relief."

public policy clearly dictates that it should not apply." Yan goes on to assert that public policy, as expressed in *Rowland v. Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561], "dictates that this [c]ourt should recognize BMW's duty to Yan." In *Rowland*, our Supreme Court "recognized that several factors should be considered in determining the existence of a duty." (*Burgess, supra,* 2 Cal.4th at p. 1079.) "The factors include: ' "the foreseeability of harm to the plaintiff, the degree of certainty that plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." ' " (*Burgess, supra,* 2 Cal.4th at pp. 1079–1080.)

Yan argues that the *Rowland* factors weigh in favor of finding that BMW owed a duty to avoid causing her emotional distress. We disagree. As we have noted, the California Supreme Court has ruled that there is no duty to avoid negligently causing emotional distress to another. (*Potter, supra,* 6 Cal.4th at p. 984.) Moreover, examination of the *Rowland* factors does not convince us that public policy compels an extension of the duty of care owed by product manufacturers and sellers, by imposing a legal duty to avoid causing the emotional distress that is foreseeable when a product owner, who was not present at the injury-producing event, lends a defective product to a close family member and the product defect contributes to the close family member's injury.

█ The first two *Rowland* factors are the foreseeability of harm to the plaintiff and the degree of certainty that the plaintiff has suffered an injury. Yan asserts that the foreseeability of her emotional distress due to the death of her sister in an accident involving Yan's defective BMW convertible is dispositive of the duty question. Again, we are guided by the California Supreme Court's decisions regarding negligent infliction of emotional distress. "In line with our recent decisions, we will not treat the mere presence of a foreseeable risk of injury to third persons as sufficient, standing alone, to impose liability for negligent conduct." (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 399 [11 Cal.Rptr.2d 51, 834 P.2d 745].) "In short, foreseeability is not synonymous with duty; nor is it a substitute." (*Erlich v. Menezes, supra,* 21 Cal.4th at p. 552.) Here, we do not doubt that Yan suffered foreseeable emotional distress as a result of her sister's death. We determine only that these factors alone are insufficient to impose a duty on BMW under the facts of this case.

As to the third factor of the closeness of the connection between the defendant's conduct and the injury suffered, Yan asserts that "the only reason

that [she] suffered emotional distress is that her 'safe' car failed to protect her family, contributing to injuring her parents and killing her sister." On demurrer, we accept as true the allegations that BMW's negligence was a cause of the death of Yan's sister and Yan's corresponding emotional distress.

The next *Rowland* factor is the moral blame attached to the defendant's conduct. This factor does not weigh in Yan's favor. Yan alleges that the head protection system provided by BMW had manufacturing and design defects that contributed to the seriousness of her sister's injuries. Yan does not allege that BMW failed to include a head protection system of any kind, intentionally failed to provide an adequate head protection system, or committed any other morally reprehensible act in connection with the head protection system. (See, e.g., *Steven F. v. Anaheim Union High School Dist.* (2003) 112 Cal.App.4th 904, 917 [6 Cal.Rptr.3d 105] [no moral blame where school district had generally done its part to prevent the subject misconduct]; *Lawson v. Management Activities, Inc., supra,* 69 Cal.App.4th at p. 659 [no moral blame because plane crashes usually are due to tragic human error and not to moral indifference to the possibility of injury].)

The final *Rowland* factors are the policy of preventing future harm; the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach; and the availability, cost, and prevalence of insurance for the risk involved. We recognize that, as our Supreme Court has stated, "[o]ne of the purposes of tort law is to deter future harm." (*Burgess, supra,* 2 Cal.4th at p. 1081.) However, to deter the manufacture and sale of defective products, it is not necessary to impose a duty upon product manufacturers and sellers to avoid negligently causing emotional distress to product owners who lend a defective, injury-causing product to a family member. This is because the manufacturers and sellers of defective products are already liable for damages resulting from the injuries suffered by the users of those defective products. (See, e.g., *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 478 [110 Cal.Rptr.2d 370, 28 P.3d 116].)

The law of products liability is also relevant to our evaluation of the consequences of the imposition of liability and the availability, cost, and prevalence of insurance for the risk involved. Imposing liability on BMW and other product manufacturers and sellers to the extent urged by Yan would greatly enlarge the potential liability of all providers of goods by expanding the number of potential plaintiffs. Currently, manufacturers and sellers are exposed to claims of emotional distress suffered by persons injured while using a defective product. (See, e.g., *Kately v. Wilkinson* (1983) 148 Cal.App.3d 576, 587–588 [195 Cal.Rptr. 902].) Allowing their close relatives, who were not present at the injury-producing event, also to recover emotional

distress damages would inevitably increase both insurance costs and the demands for payment from the pool of available insurance funds. (See, e.g., *Huggins*, *supra*, 6 Cal.4th at p. 133 [expansion of pharmacists' liability would increase medical malpractice costs and negatively impact medical care]; *Lawson v. Management Activities, Inc.*, *supra*, 69 Cal.App.4th at p. 660 [extending liability to bystanders frightened by plane crash would exhaust insurance availability].)

For these reasons, our review of the *Rowland* factors supports our determination that the law does not impose a duty on BMW to avoid negligently causing emotional distress to owners of BMW vehicles, such as Yan, who lend their vehicles to close family members who are then injured out of the owner's presence while using the defective vehicle.

### c. *Kately v. Wilkinson*

Yan's reliance on *Kately v. Wilkinson*, *supra*, 148 Cal.App.3d 576 (*Kately*), as authority for her contention that she is BMW's direct victim is misplaced. In *Kately*, the appellate court allowed the owner of a defective boat to recover damages from the seller and manufacturer of the boat for the emotional distress suffered when the boat malfunctioned and caused fatal injuries to the young girl water-skiing behind the boat. (*Kately*, *supra*, 148 Cal.App.3d at pp. 587–588.) However, the facts in *Kately* are distinguishable from the facts in the present case on a crucial point.

In *Kately*, the owner was using the boat at the time of the accident by operating it and towing the water skier. On those facts, the appellate court concluded, "The user of a defective product is not a mere bystander but a primary and direct victim of the product defect; this is true whether the defective product directly or immediately injures the user or severely harms another while being operated by the user; it is equally true whether the user suffers physical or emotional injuries." (*Kately*, *supra*, 148 Cal.App.3d at p. 588.)

The decision in *Kately* makes clear that the plaintiff product owner was *using* the defective boat as intended at the time of the injury-producing event. Thus, the manufacturer and seller of the boat owed the plaintiff a duty of care. (See *Williams v. Beechnut Nutrition Corp.*, *supra*, 185 Cal.App.3d at p. 141.) Accordingly, the decision in *Kately* does not aid Yan, but instead supports our conclusion that Yan was not a direct victim of BMW's breach of its duty to use due care in designing and manufacturing the head protection system. In contrast with the plaintiff in *Kately*, Yan was not operating her BMW convertible nor was she present at the time of the accident in which her sister was fatally injured.

## IV. CONCLUSION

For these reasons, we determine that BMW owed no duty to Yan that would allow her to recover for emotional distress suffered as the direct victim of BMW's alleged negligence, and we conclude that the trial court properly sustained BMW's demurrer to Yan's cause of action for negligent infliction of emotional distress without leave to amend. Accordingly, we need not address Yan's request for leave to amend her complaint, because Yan expressly requested leave to amend her complaint only if this court ruled that BMW owed her a duty.

## V. DISPOSITION

The judgment is affirmed.

Mihara, J., and McAdams, J., concurred.