Richard **WILLIAMS**, Plaintiff,

v.

**INTEGON NATIONAL INSURANCE CORPORATION**, Defendant.

**Case No. 15-cv-2075 DMS (RBB)**

United States District Court, S.D. California.

Signed June 2, 2016

Filed June 3, 2016

Catharine E. Kroger-Diamond, Law Offices of Catherine Kroger-Diamond APC, Carlsbad, CA, for Plaintiff.

Charles S. Haughey, Jr., Lewis Brisbois Bisgaard and Smith, San Diego, CA, for Defendant.

## ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT

Hon. Dana M. Sabraw, United States District Judge

This matter comes before the Court on Defendant Integon National Insurance Corporation's motion to dismiss Plaintiff's First Amended Complaint ("FAC"). Plaintiff filed an opposition, and Defendant filed a reply. The parties also filed responses to the Court's order to show cause regarding subject matter jurisdiction. Having reviewed the parties' briefs, the Court is satisfied it has subject matter jurisdiction and may address the pending motion. For the reasons set forth below, Defendant's motion to dismiss is denied.

## I.

## BACKGROUND

Plaintiff purchased a 2010 Ford Mustang GT for $21,999 on May 13, 2013, and insured the vehicle by purchasing and maintaining an automobile insurance policy ("Policy") issued by Defendant. FAC ¶ 1. The Policy covered Plaintiff and his vehicle for injuries and losses caused by both collision and non-collision related events, including theft, malicious mischief, and vandalism. *Id.* Plaintiff alleges his car was stolen sometime between May 26 and 28, 2014. *Id.* ¶¶ 2–6. He promptly reported the vehicle missing to the police on May 28, 2014, and filed a claim with Defendant under the Policy for non-collision related losses. *Id.* ¶¶ 6–7. On May 29, 2014, the vehicle was recovered by the police. *Id.* ¶ 8. Plaintiff alleges the car had been vandalized during the time it was missing and incurred $12,867.16 in damages. *Id.* ¶ 8. Plaintiff fully cooperated with Defendant's investigation, signed a statement under oath, and informed Defendant that the ve-

hicle had been stolen and vandalized through no fault of his own. *Id.* ¶¶ 8–9.

Thereafter, Defendant denied the claim on grounds that loss resulting from theft of the vehicle was excluded from coverage because there was no evidence of forced entry. *Id.* ¶ 10. Plaintiff alleges Defendant wrongfully and maliciously contended that "Plaintiff's denials of involvement in the theft of the vehicle were fraudulent, while ignoring coverage under the theft and vandalism portions of his policy." *Id.* ¶¶ 10–11. Based on these events, Plaintiff alleges four causes of action for breach of contract, breach of the covenant of good faith and fair dealing, negligent infliction of emotional distress, and intentional infliction of emotional distress. Plaintiff seeks contractual damages in the sum of $12,867.16 for property damage and $25 per day for loss of use, tort damages according to proof, and punitive and exemplary damages.

## II.

### LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir.2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir.1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reason-

able inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)) (alteration in original). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the ... laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

## III.

### DISCUSSION

Defendant challenges all claims for relief and seeks dismissal of the FAC. Each cause of action is addressed in turn.

### A. Breach of Contract

The essence of Defendant's challenge to Plaintiff's breach of contract claim is that the FAC "unambiguous[ly] alleges ... the subject incident was a theft, and not vandalism, and, since there was no

visible evidence of forced entry, there is a specific exclusion from coverage under the policy." Reply Br. at 1. Plaintiff, however, alleges breach of contract based on Defendant's unduly narrow reading of the Policy: Defendant "relied on the policy provision requiring evidence of forced entry to trigger theft coverage to deny his claim, while ignoring his concurrent claim for coverage under the vandalism portion of his policy, which had no forced entry requirement." FAC ¶ 20.

 Generally, ordinary rules of contract interpretation apply to insurance contracts. *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." Cal. Civ. Code § 1636. Such intent is to be inferred, if possible, solely from the "written provisions of the contract." *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990). If contractual language is clear and explicit, as here, it governs. Cal. Civ. Code § 1638.

The Policy provides coverage for an "insured auto" for certain non-collision related events in Part D of its Insuring Agreement. *See* FAC, Ex. 1 (Policy), Pt. D, pg. 32. The Policy provides, in pertinent part:

**INSURING AGREEMENT—OTHER THAN COLLISION COVERAGE**

If **you** pay the premium for Other Than Collision Coverage, **we** will pay for sudden, direct and accidental **loss** to an **insured auto** ... resulting from a **loss** caused by **Other Than Collision.**

\*\*\*

**ADDITIONAL DEFINITIONS**

As used in the PART D:

\*\*\*

B. **"Other than Collision"** means **loss** caused by the following:

\*\*\*

3. theft or larceny;

\*\*\*

7. malicious mischief or vandalism[.]

\*\*\*

**EXCLUSIONS**

READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, **YOU** WILL NOT HAVE COVERAGE FOR AN **ACCIDENT** OR **LOSS** THAT OTHERWISE WOULD BE COVERED UNDER PART D.

**We** will not pay for **loss**:

\*\*\*

22. due to theft, larceny or conversion of an **insured auto** or its equipment:

\*\*\*

c. where there is no visible sign of forced entry into the **insured auto.**

FAC, Ex. 1, Pt. D, pgs. 32, 34, 35, & 38 (emphasis in original).

Plaintiff alleges his vehicle was damaged by an event other than collision, specifically theft and vandalism. FAC ¶¶ 8–9. In denying coverage, Defendant focused on theft, apparently because Plaintiff believed his car was stolen. Defendant determined that while the Policy covered theft it excluded from coverage any loss caused by theft because there were no signs of forced entry. *Id.* ¶ 10. The Policy, however, provides coverage for other occurrences, including malicious mischief and vandalism, which are not subject to the stated exclusion.

Defendant cites *Certain Underwriters at Lloyds, London v. Law* ("*Law*"), 570 F.3d 574 (5th Cir.2009), *Riverbend Capital, LLC v. Essex Ins. Co.* ("*Riverbend Capital*"), 2010 WL 3942907 (E.D.La. Oct. 5, 2010), and *Essex Ins. Co. v. Eldridge Land, L.L.C.* ("*Eldridge Land*"), 442 S.W.3d 366 (Tex.App.–Hous.2010), for the proposition that where a loss is caused by theft there is no coverage for vandalism. Oppo. Br. at 9–10. However, those cases

are distinguishable because the insurance policy there at issue is materially different. In addition, they were decided on summary judgment. All three cases analyzed the same Form Policy, which covered vandalism but excepted from that coverage losses caused by or resulting from theft, as follows:

**A. Covered Causes of Loss** . . .

Covered Causes of Loss means the following:

\*\*\*

8. Vandalism, meaning willful and malicious damage to, or destruction of, the described property.

\*\*\*

We will not pay for loss or damage caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars.

*Law*, 570 F.3d at 576 (quoting policy). As noted in *Eldridge Land*, 442 S.W.3d at 374, "[t]he theft exclusion appears within the same paragraph providing coverage for vandalism and was clearly intended as an exclusion or exception to the vandalism coverage." Thus, the policy focused "on the purpose for which the damage at issue is done: (1) Damage done for no purpose other than to destroy property for destruction's sake is 'vandalism;' (2) incidental damage done in furtherance of thievery falls within the narrower category of damage resulting from theft[.]" *Law*, 570 F.3d at 578; *Riverbend Capital*, 2010 WL 3942907, at \*7 (holding, in view of theft exclusion "vandalism coverage extends to all property damaged with the intention to injure it, *but not with the intent to steal.*") (Emphasis added). Because the damage in *Law* was indisputably caused by theft, not vandalism, the exclusion applied and there was no coverage. 570 F.3d at 579 (granting summary judgment and finding, "the damage was done solely to further the theft and was not vandalism as that term is used in the policy."). And, as noted in *Eldridge Land*, "[i]n circumstances where the more specific exclusion applies, it is axiomatic that there is no coverage under the more general coverage provision." 442 S.W.3d at 374 (citation omitted) (finding no coverage where undisputed evidence established all damage was caused by or resulted from theft). *Cf. Riverbend Capital*, 2010 WL 3942907, at \*8 (denying summary judgment for insurer where the parties "proffered conflicting evidence on the type of damage [*i.e.*, done with intent to steal or done without intent to steal] that Plaintiff's property sustained.")

In the present case, the Policy covers *both* theft and vandalism. And unlike the policy in *Law*, *Eldridge Land*, and *Riverbend Capital*, the Policy does not exclude from vandalism coverage damage caused by theft. The vandalism coverage stands alone and is not subject to any exclusion or exception. Accordingly, the entire exercise in the cases discussed above—whether undisputed evidence established that the damage was caused solely by theft, thus triggering the exclusion to vandalism coverage—is irrelevant under the Policy at issue.

Assuming the theft exclusion applies as Defendant argues, that would only eliminate coverage for losses caused by theft. But the coverage for vandalism remains. To defeat coverage, Defendant would have to show through undisputed evidence that the loss was *not* caused by vandalism. Obviously, vandalism can occur during a theft, and vice versa. *Law*, 570 F.3d at 579 ("These are not . . . mutually exclusive events."). Plaintiff has alleged his car was damaged as a result of theft and vandalism. FAC ¶ 9. Accepting these allegations as true, as the Court must at this stage of the proceedings, Plaintiff has stated a claim for breach of contract as the claim falls within the Policy's vandalism coverage and is not subject to an exclusion.

## B. Breach of the Implied Covenant

▮ Plaintiff alleges Defendant unreasonably denied his claim for vandalism by ignoring evidence consistent with coverage and myopically focusing on facts that supported denial of the claim, all while conducting an inadequate investigation and maliciously accusing Plaintiff of insurance fraud to cause him to abandon his claim. FAC ¶ 26. If an insurer unreasonably and without proper cause refuses to pay policy benefits, it is subject to liability in tort ("bad faith") for breach of the implied covenant of good faith and fair dealing. *Gourley v. State Farm Mut. Auto. Ins. Co.*, 53 Cal.3d 121, 127, 3 Cal.Rptr.2d 666, 822 P.2d 374 (1991); *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 818, 169 Cal.Rptr. 691, 620 P.2d 141 (1979). An insurer also may breach the covenant of good faith and fair dealing by failing to properly investigate its insured's claim. 24 Cal.3d at 817, 169 Cal.Rptr. 691, 620 P.2d 141. The foregoing allegations in the FAC, accepted as true at this stage, are sufficient to state a claim for breach of the implied covenant.

## C. Negligent Infliction of Emotional Distress

▮ Plaintiff alleges negligent infliction of emotional distress resulting from, among other things, Defendant "falsely accus[ing] Plaintiff of fraud as a pretext to deny his claim, in an effort to cause Plaintiff to abandon his claim, by relying on the lack of forced entry clause to deny his claim under his theft coverage, but failing to investigate and pay his claim under his vandalism coverage, which has no forced entry requirement." FAC ¶ 30. Plaintiff further alleges that he fully cooperated in Defendant's investigation and provided a statement under oath, (*id.* ¶ 8), such that Defendant's subsequent pretextual accusations of fraud caused him serious emotional distress, including nervousness, anxiety, humiliation, and shame. *Id.* ¶ 32.

▮ To establish a claim for negligent infliction of emotional distress Plaintiff must allege: (1) a legal duty to use due care; (2) a breach of such duty; (3) legal cause; and (4) damages caused by the negligent breach. *Friedman v. Merck & Co.*, 107 Cal.App.4th 454, 463, 131 Cal.Rptr.2d 885 (2003). Defendant argues that "[n]o cause of action for 'negligence' [or negligent infliction of emotional distress] can be properly plead by an insured against its insurer, since any duties owed by the insurer to the insured are contractual in nature, and any tort obligations are limited to claims for breach of the implied covenant of good faith, not negligence." Reply Br. at 7 (citing *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 573, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973) and other cases). Defendant's argument sweeps too broadly.

For example, the California Supreme Court in *Gruenberg* noted that "the existence of a contractual relationship does not insulate defendant insurers from liability that is 'ordinarily visited upon tortfeasors' for interfering with a property interest of the insured in receiving the benefits of the agreement." 9 Cal.3d at 578, 108 Cal.Rptr. 480, 510 P.2d 1032 (citation omitted). Further, the cases cited by Defendant which hold that negligence alone is not sufficient to impose liability against an insurance company are limited to the circumstance where the insurer declined to accept a settlement offer and exposed the insured to excess liability stemming from a third party suit. *See, e.g., Brown v. Guarantee Ins. Co.*, 155 Cal.App.2d 679, 688–689, 319 P.2d 69 (1957). There the court pointed out that while a negligence claim cannot be stated under that circumstance, such a claim can be stated against an insurer in other contexts:

An action for wrongful refusal to settle is to be distinguished from one for wrongful failure to defend the action against the insured, where mere negli-

gence is held sufficient to justify recovery. (See annot., 131 A.L.R. 1499, 1510.) The insurer's duty to defend any action against the insured is clearly expressed in the insurance policy, whereas the policy provision concerning settlement by the insurer is usually permissive in form. The mandatory duty to defend justifies the implication of a requirement that the insurer exercise ordinary care in conducting such defense.

*Id.* (analyzing cases). *See also Christian v. Preferred Acc. Ins. Co., et al.,* 89 F.Supp. 888, 889 (N.D.Cal.1950) (similar).

In *Gu v. BMW of North America, LLC,* 132 Cal.App.4th 195, 204, 33 Cal.Rptr.3d 617 (2005), the court recognized that, "[a] legal duty may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship" giving rise to a separate claim for negligent infliction of emotional distress based upon a direct victim theory of liability. *Id.* (citation omitted) (emphasis added). Courts have found a "'special relationship' inherent in the unique nature of an insurance contract." *Love v. Fire Insurance Exchange,* 221 Cal.App.3d 1136, 1147, 271 Cal.Rptr. 246 (1990). Because of this special relationship, the insurer is held to a heightened duty of good faith. *Id.* Insurance contracts are unique because instead of seeking economic gain, insureds seek "security and peace of mind through protection against calamity." *Id.* at 1148, 271 Cal.Rptr. 246. Consistent with the foregoing, courts have permitted negligent infliction of emotional distress claims against an insurer based on alleged mishandling of an insured's claim for policy benefits. *See Johnson v. Mutual Benefit Life Ins. Co.,* 847 F.2d 600 (9th Cir.1988) (discussing insured's negligent infliction of emotional distress claim against insurer); *Bogard v. Employers Casualty Co.,* 164 Cal.App.3d 602, 210 Cal. Rptr. 578 (1985) (recognizing insureds' negligent infliction of emotional distress claim against insurer); *Williams v. Trans-*

*port Indem. Co.,* 157 Cal.App.3d 953, 963–64, 203 Cal.Rptr. 868 (1984) (implying insured's spouse could maintain claim for negligent infliction of emotional distress *if* she was an insured under the policy).

Under the facts alleged in the FAC, Plaintiff has stated a claim for negligent infliction of emotional distress. The motion to dismiss this claim is therefore denied.

**D. Intentional Infliction of Emotional Distress**

■■■■ The elements of a claim for intentional infliction of emotional distress are: (1) outrageous conduct by the defendant; (2) intention to cause or reckless disregard of the probability of causing emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation of the emotional distress. *Newby v. Alto Riviera Apartments,* 60 Cal.App.3d 288, 296, 131 Cal.Rptr. 547 (1976). Outrageous conduct is conduct that is so extreme "as to go beyond all possible bo[u]nds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Alcorn v. Anbro Engineering, Inc.,* 2 Cal.3d 493, 499 n. 5, 86 Cal.Rptr. 88, 468 P.2d 216 (1970).

Defendant argues that denial of an insurance claim, even if negligent or dilatory, is not outrageous conduct. *Ricard v. Pacific Indemnity Co.,* 132 Cal.App.3d 886, 894–95, 183 Cal.Rptr. 502 (1982). However, Plaintiff alleges among other things that Defendant accused him of fraud as a pretext for denying the claim and in an effort to cause him to abandon his claim. FAC ¶ 34. If true, such conduct certainly would exceed all bounds of decency and could be regarded as atrocious. Accordingly, Plaintiffs have stated a claim and adequately alleged punitive damages, particularly under the notice pleading standards of the Federal Rule of Civil Procedure. *See* Fed. R. Civ. P. 8.

## III.

## CONCLUSION

For these reasons, Defendants' motion to dismiss is denied.

**IT IS SO ORDERED.**

Dated: June 2, 2016.