# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| MICHAEL J. SPENCE, Individually, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. N15C-04-014 PRW |
| ACHAMMA CHERIAN, Pharm. D., RPH, Individually, RITE AID OF DELAWARE, INC., a Delaware Corporation, | ) ) ) ) ) ) | |
| Defendants and Third- Party Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| DAVID SPENCE, | ) ) | |
| Third-Party Defendant. | ) ) | |

Submitted: February 24, 2016
Decided: May 20, 2016

## MEMORANDUM OPINION AND ORDER

*Upon Third-Party Defendants' Motion to Dismiss Defendants'/Third-Party Plaintiffs' Third-Party Complaint,*
**GRANTED.**

Andrew C. Dalton, Esquire, Dalton & Associates, P.A., Wilmington, Delaware, Attorney for Third-Party Defendant.

Stephen F. Dryden, Esquire, Dryden, LLC, New Castle, Delaware, Attorney for Defendants/Third-Party Plaintiffs.

**WALLACE, J.**

## I. INTRODUCTION

Michael J. Spence is a twenty-six year-old being treated for Human Immunodeficiency Virus ("HIV") infection. As of June 17, 2014, he had made the difficult decision to not yet share his diagnosis with his parents; he did, however, share the same Rite Aid Pharmacy with them.

This action arises from Rite Aid's disclosure to Michael's father the names of some of Michael's HIV medications. Michael has sued Rite Aid (and its pharmacist – collectively "Rite Aid") for damages arising from that disclosure. While it might seem unfathomable to those of common sensibility, Rite Aid has now brought Michael's father into this civil action, claiming that he is either solely or partially liable for any damages that arose from his expressing paternal concern for Michael once he found out about his son's medical condition.

Before the Court is Michael's father's motion to dismiss Rite Aid's third-party complaint through which it claims he is responsible, at least in part, for any damages it may owe his son, Michael. Because Rite Aid has failed to plead the requisite elements for its third-party claims or those claims are otherwise without merit, the Court **GRANTS** Michael's father's motion to dismiss.

## II.  FACTUAL[1] AND PROCEDURAL BACKGROUND

### A.  MICHAEL'S COMPLAINT AGAINST RITE AID AND ITS PHARMACIST.

On June 17, 2014, David Spence ("Mr. Spence") went to a Rite Aid Pharmacy in Newark, Delaware to pick up a prescription for his wife, Patricia Spence.  When he asked the pharmacy clerk for Mrs. Spence's medication, the clerk informed Mr. Spence there were two prescriptions available for Michael.  Mr. Spence told the clerk Michael was his son, and the clerk brought over two medications contained in a clear bag—Tivicay and Epzicom.  They were placed on the counter before Mr. Spence in such a way that he could read at least one of their labels.  Mr. Spence asked the clerk what the medications were for, and the clerk in turn asked the pharmacist-on-duty and manager, Defendant Achamma Cherian, Pharm. D., RPH.  Cherian told Mr. Spence that the medications were anti-virals or anti-retrovirals.  Mr. Spence did not take Michael's prescriptions but picked up and paid only for his wife's.

After leaving the pharmacy, Mr. Spence researched the names of his son's medications he was shown at Rite Aid.  He found they were used to treat HIV.  The Spences had not known their son was HIV positive.  Mr. Spence confided their son's diagnosis to his wife.  The next day, Mrs. Spence spoke to Michael

---

[1]    These facts are derived from the Complaint, Answer, Third–Party Complaint and the parties' filings related to the instant motion.  While there is some divergence on certain details, there is no disagreement on the facts significant to this motion's disposition.

about his HIV status. According to his complaint, from these events Michael "suffered severe emotional distress, sleep deprivation, became physically ill, and vomited."[2]

After speaking to his mother and father, Michael went to Rite Aid to discuss with Cherian what had happened the previous day. Cherian was not there, but another pharmacist told Michael that Cherian would contact him. The next day, on June 19th, Cherian called Michael and admitted she told Mr. Spence what the medications were. She then apologized to Michael but insisted "it was impossible for his father to determine what the medications were for."[3]

Michael brought claims against Defendants Rite Aid of Delaware, Inc., and Achamma Cherian, Pharm. D., RPH, (again, collectively "Rite Aid") for: (1) healthcare medical negligence; (2) negligence; (3) negligence *per se*; (4) breach of confidentiality; (5) invasion of privacy – publication of private facts; (6) intentional infliction of emotional distress; (7) negligent infliction of emotional distress; (8) breach of contract; and (9) promissory estoppel.

---

[2]     Compl. ¶ 18.

[3]     *Id.* ¶ 20.

## B. Rite Aid's Third-Party Complaint – Rite Aid and its Pharmacist Attempt to Join Michael's Father.

Rite Aid has filed a third-party complaint against Mr. Spence. It says he is the pharmacy's and pharmacist's joint tortfeasor and is responsible, in part, for Michael's injuries. In its charging document Rite Aid neglected to specify which of Michael's claims it seeks to pursue against his father. And it also failed to incorporate Michael's allegations from his original filing. Instead Rite Aid's complaint, in a blanket statement, blithely alleges: that Michael's injuries "were directly and/or proximately caused by the intentional and/or reckless and/or negligent actions" of his father; that his father "is liable to Plaintiff Michael Spence"; and, that if Rite Aid is responsible for any damages then Michael's father "is jointly and severally liable to [Rite Aid] for contribution as to [Michael]'s claims."[4]

---

[4]   Third-Party Compl. ¶ 218. The third-party complaint makes some curiously misplaced factual allegations that are of no moment here. *See, e.g., id.* ¶ 206 (claiming that Mr. Spence was authorized to pick up prescriptions for Michael "and no written restriction to this authorization" had been filed); *id.* ¶ 210 (parsing semantics – as Rite Aid did at hearing of the motion – while arguing that Epzicom and Tivicay are classified as anti-retroviral medications, not anti-virals). Rite Aid's filings also contain some ill-placed legal arguments. *See* Rite Aid's Supp. Mem. at 11 (noting that a supervening cause may shelter a defendant from liability). Evidence of a supervening cause may be relevant, and the existence of that cause may indeed sometimes shield a defendant from liability. *See Duphily v. Delaware Elec. Co-op, Inc.,* 662 A.2d 821, 828 (Del. 1995); *Sears, Roebuck Co. v. Huang,* 652 A.2d 568, 573 (Del. 1995). But that does not mean the agent of that supervening cause can necessarily be subject to a third-party claim for contribution. *See, e.g., Duphily,* 662 A.2d at 828 (observing that another's act may be relevant to the injury-producing event but not actionable); *Huang,* 652 A.2d at 573 (parent's negligence might be relevant to child's theory of liability, but not actionable and thus not subject to a direct claim of liability or a third-party claim for contribution).

## C. Rite Aid abandons certain – yet still clings onto some – claims against Michael's father.

At argument on Mr. Spence's dismissal motion, the Court pressed Rite Aid for clarification as to which claims from Michael's complaint could possibly give rise to his father's purported liability. Rite Aid conceded then that the healthcare medical negligence, negligence, negligence *per se*, breach of confidentiality, and breach of contract claims could not be alleged against Mr. Spence.[5] Rite Aid still stubbornly contends, though, that Michael's father could be held liable as its joint tortfeasor for his son's claims alleging: invasion of privacy - publication of private facts (Complaint Count V); intentional infliction of emotional distress (Complaint Count VI); negligent infliction of emotional distress (Complaint Count VII); and promissory estoppel (Complaint Count IX).[6]

## III. STANDARD OF REVIEW

A motion to dismiss a third-party complaint is subject to the same Civil Rule Rule 12(b)(6) standard as any complaint commencing a civil action in this Court.[7] As such, the Court is not required to accept conclusory allegations unsupported by specific facts.[8] But if a third-party complaint incorporates by reference the

---

[5] *See* Tr. of Oral Arg., Dec. 22, 2015, at 12-15 (D.I. 40).

[6] *Id.* at 15.

[7] *See Beesly v. Miller*, 2014 WL 1759862, at *1 (Del. Super. Ct. Apr. 3, 2014).

[8] *See Price v. E.I. duPont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011).

allegations of the original complaint, "the Court must accept as true the well-pleaded allegations in both the underlying complaint and the third-party complaint."[9]

That said, to survive a motion to dismiss, a third-party plaintiff still must plead (or incorporate) facts sufficient that under any reasonably conceivable set of circumstances susceptible of proof, it could recover.[10] When considering a motion to dismiss under Rule 12(b)(6), the Court will:

> (1) accept all well pleaded factual allegations as true; (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim; (3) draw all reasonable inferences in favor of the non-moving party; and (4) [not dismiss a claim] unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[11]

A third-party complaint will be dismissed where "it is clearly without merit, which may be either a matter of law or fact."[12] In turn, the Court should dismiss a claim if a third-party plaintiff fails to plead, or cannot make out on the facts pleaded, an

---

[9] *Beesly*, 2014 WL 1759862, at *1 (quoting *Marcucilli v. Boardwalk Builders, Inc.*, 1999 WL 1568612, at *3 (Del. Super. Ct. Dec. 22, 1999)).

[10] *WP Devon Assocs. v. Hartstrings, LLC*, 2012 WL 3060513, at *3 (Del. Super. Ct. July 26, 2012) (citing *Cambium Ltd. v. Trilantic Capital Partners III L.P.*, 2012 WL 172844, at *1 (Del. Jan. 20, 2012)).

[11] *See Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 535 (Del. 2011) (stating standard for motions to dismiss).

[12] *Diamond State Tel. Co. v. Univ. of Delaware*, 269 A.2d 52, 58 (Del. 1970); *Wilmington Trust Co. v. Polizer & Haney, Inc.*, 2003 WL 1989703, at *2 (Del. Super. Ct. Apr. 25, 2003).

essential element of that claim.[13] And if a plaintiff could not have originally sued the third-party defendant on a given claim, the claim against the third-party defendant also must be dismissed.[14]

## IV. DISCUSSION

### A. THE HEALTHCARE MEDICAL NEGLIGENCE, NEGLIGENCE, NEGLIGENCE *PER SE*, BREACH OF CONFIDENTIALITY, AND BREACH OF CONTRACT CLAIMS ARE NO LONGER BEFORE THE COURT.

As Rite Aid had to admit at argument of this motion, Mr. Spence could not be liable to Michael for the healthcare medical negligence, negligence, negligence *per se*, breach of confidentiality, or breach of contract claims.[15] Accordingly, to the extent the third-party complaint sought to hold Michael's father liable for them, those claims must be **DISMISSED**.

---

[13] *See Harris v. Dependable Used Cars, Inc.*, 1997 WL 358302, at *2-3 (Del. Super. Ct. Mar. 20, 1997); *Wolstenholme v. Hygenic Exterminating Co., Inc.*, 1988 WL 77655, at *1-2 (Del. Super. Ct. July 5, 1988); *see also Zebroski v. Progressive Direct Ins. Co.*, 2014 WL 2156984, at *6 (Del. Ch. Apr. 30, 2014).

[14] *See Miller v. Ellis*, 122 A.2d 314, 318 (Del. 1956) ("If the plaintiff originally could not have sued the third-party wrongdoer, the latter cannot be joined thereafter as a third-party defendant."); *Ferguson v. Davis*, 102 A.2d 707, 708 (Del. Super. Ct. 1954) (where there is "no possible liability or right of action as between the third-party defendant and the plaintiff," the third-party plaintiff cannot recover from the third-party defendant); *Sinex v. Bishop*, 2005 WL 3007805, at *5 (Del. Super. Ct. Oct. 27, 2005) ("Because plaintiffs could not have sued the third party defendants, the third party defendants cannot be joined in this lawsuit.").

[15] *See* Tr. of Oral Arg., Dec. 22, 2015, at 12-15 (D.I. 40).

## B. RITE AID FAILS TO STATE A CLAIM AGAINST MR. SPENCE FOR PUBLIC DISCLOSURE OF PRIVATE FACTS.

There are four varieties of the tort of invasion of privacy: (1) intrusion on solitude; (2) public disclosure of private facts; (3) placing a plaintiff in a false light; and (4) appropriation for commercial use.[16] At issue here is the tort of publication of private facts. Delaware has adopted the Restatement (Second)'s definition of that tort:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>
> (a) would be highly offensive to a reasonable person, and
>
> (b) is not of legitimate concern to the public.[17]

The Restatement provides that a matter has been given publicity when it is "made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."[18] It is not an invasion of privacy to communicate a fact concerning one's private life to just one person, or even to a small group.[19]

---

[16]    *Martin v. Baehler*, 1993 WL 258843, at *1 (Del. Super. Ct. May 20, 1993).

[17]    *Barker v. Huang*, 610 A.2d 1341, 1350 (Del. 1992) (citing Restatement (Second) of Torts § 652D).

[18]    *Atamian v. Gorkin*, 1999 WL 743663, at *3 (Del. Super. Ct. Aug. 13, 1999) (citing Restatement (Second) of Torts § 652D cmt. a) (granting summary judgment on count of public disclosure of private facts because doctor's note was communicated only to hospital staff).

Michael's complaint and Rite Aid's third-party complaint allege that upon his father's learning Michael was HIV positive one day,[20] his mother approached him the next day about his HIV status.[21] There are no allegations that Michael's father disclosed his HIV diagnosis to anyone other than Michael's mother. Thus the only reasonable inference in Rite Aid's favor is that Mr. Spence told one person—his wife, Michael's mother—about Michael's diagnosis. Rite Aid has adopted this factual allegation as true.[22] Such disclosure does not rise to the level of "publicity" defined by the Restatement. Nor does Mr. Spence's visit to and discussion of Michael's medical status with Michael's doctor; that visit occurred with his wife and Michael.[23]

Rite Aid's third-party claim against Mr. Spence having failed to plead, either expressly or by incorporation, facts supporting this essential element[24] of invasion of privacy against Mr. Spence must be **DISMISSED.**

---

[19] *Id.*

[20] Compl. ¶ 16; Third-Party Compl. ¶¶ 210-13.

[21] Compl. ¶ 17.

[22] Rite Aid's Supp. Mem. at 5, 7, and 9.

[23] Third-Party Compl. ¶¶ 214-15.

[24] *See* supra, n.13.

**C. RITE AID'S PLEADINGS FAIL TO DEMONSTRATE THAT, UNDER ANY REASONABLY CONCEIVABLE SET OF CIRCUMSTANCES, MR. SPENCE EITHER ACTED INTENTIONALLY OR RECKLESSLY, OR THAT HIS CONDUCT WAS EXTREME AND OUTRAGEOUS.**

In Delaware, the elements of the tort of intentional infliction of emotional distress ("IIED") are defined by Section 46 of the Restatement (Second) of Torts.[25] According to the Restatement, an IIED claim arises when "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."[26] Extreme and outrageous conduct is that which "exceeds the bounds of decency and is regarded as intolerable in a civilized community."[27] The Court considers the Restatement's comment as to what conduct might be sufficiently extreme and outrageous to warrant IIED liability:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would

---

[25] *See Mattern v. Hudson,* 532 A.2d 85, 85-86 (Del. Super. Ct. 1987); *Esposito v. Townsend,* 2013 WL 493321, at *6 (Del. Super. Ct. Feb. 8, 2013).

[26] *Fanean v. Rite Aid Corp. of Delaware,* 984 A.2d 812, 818 (Del. Super. Ct. 2009).

[27] *Thomas v. Hartford Mut. Ins. Co.,* 2004 WL 1102362, at *3 (Del. Super. Ct. Apr. 7, 2004).

-10-

entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'[28]

Rite Aid, it seems, would suggest that this father's research into Epzicom and Tivicay, and his later talks with his wife and son about this concerning medical information, somehow constituted intentional or reckless conduct that was extreme and outrageous. Again, however, because of the imprecision of its third-party complaint, Rite Aid fails to allege (either expressly or by incorporation) the necessary element that Mr. Spence's actions were extreme and outrageous.

Rather, more than once, Rite Aid admits that Mr. Spence's acts were "for all intents and purposes well meaning."[29] In so doing, Rite Aid admits that Mr. Spence's conduct was not, under any reasonably conceivable set of circumstances susceptible of proof, "extreme and outrageous." This Court cannot find this father's genuine concern for his son's health and safety so "intolerable in a

---

[28] *Farmer v. Wilson*, 1992 WL 331450, at *4 (Del. Super. Ct. Sept. 29, 1992) (citing Restatement (Second) of Torts § 46 cmt. d).

[29] *See, e.g.*, Rite Aid's Suppl. Mem. at 7 (noting that Mr. and Mrs. Spence did "as parents will do"); *id.* at 11 ("one can understand the as a parent the concern underscoring the actions that were taken by [Michael's father]").

civilized community" as to warrant civil liability.[30]  No reasonable mind could.[31]

As such, the claim for intentional infliction of emotional distress must be

**DISMISSED.**

### D. MR. SPENCE CANNOT BE HELD LIABLE WITH RITE AID FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BECAUSE HE BREACHED NO DUTY OF CARE OWED TO MICHAEL.

There are three elements to the claim of negligent infliction of emotional

distress ("NIED"): (1) negligence causing fright to someone; (2) that the plaintiff

was within the "zone of danger"; and (3) that the plaintiff suffered physical harm

as a result.[32]  An essential element of a NIED claim is *negligence*, which requires a

party to plead that the defendant owed, and subsequently breached, a duty to the

plaintiff.[33]  The Court determines as a matter of law whether a party owes another a

duty.[34]

---

[30]  *See Hunt v. State*, 69 A.3d 360, 367 (Del. 2013) (quoting Restatement (Second) of Torts § 46(h)) ("It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery[.]").

[31]  *Id.* (quoting Restatement (Second) of Torts § 46(h)) ("If reasonable minds may differ, the question of whether the conduct is extreme and outrageous is for the jury.").

[32]  *Armstrong v. A.I. Dupont Hosp. for Children*, 60 A.3d 414, 423 (Del. Super. Ct. 2012) (citing *Rhinehardt v. Bright*, 2006 WL 2220972, at *5 (Del. Super. Ct. July 20, 2006)).

[33]  *See Fritz v. Yeager*, 790 A.2d 469, 471 (Del. 2002) ("In order to be held liable in negligence, a defendant must have been under a legal obligation—a duty—to protect the plaintiff from the risk of harm which caused his injuries.").

[34]  *See Riedel v. ICI Americas Inc.*, 968 A.2d 17, 20 (Del. 2009).

Rite Aid properly identifies duty as the key issue here.[35] It seems to recognize that "'duty' is . . . an expression of the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection."[36] But Rite Aid fails to "perceive duty simply as an obligation to which the law will give recognition in order to require one person to conform to a particular standard of conduct with respect to another person."[37]

Rite Aid incants some general "duty" principles.[38] Then Rite Aid claims that because it was foreseeable that Mr. Spence's online research into the medications and in-person discussion with Michael about his condition would cause distress, Mr. Spence owed Michael a duty not to investigate the medications, or at least not to express his paternal concerns to Michael (or Michael's mother) about his findings.[39] And lastly, Rite Aid claims that this Court's decision in

---

[35] Rite Aid's Supp. Mem. at 7 ("The question then is duty.").

[36] *Furek v. Univ. of Delaware*, 594 A.2d 506, 522 (Del. 1991) (quoting W. Prosser, *Law of Torts* 333 (3d ed. 1964)).

[37] *Bradshaw v. Rawlings*, 612 F.2d 135, 138 (3d Cir. 1979).

[38] *See, e.g.,* Rite Aid's Supp. Mem. at 8 ("all persons have a duty 'to use ordinary care to prevent others being injured as the result of their conduct'") (quoting *Rowland v. Christian*, 443 P.2d 561, 564 (Cal. 1968)); *id.* at 8-9 ("In general, anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act.") (quoting *Wilson v. Urquhart,* 2010 WL 2683031, at *4 (Del. Super. Ct. July 6, 2010) (quoting Restatement (Second) of Torts § 302 cmt. a)).

[39] *Id.* at 9 (citing *Kuczynski v. McLaughlin,* 835 A.2d 150, 155 (Del. Super. Ct. Aug. 27, 2003) (duty "derives from the relationship between the parties and the foreseeable risk of harm that is implicated by the relationship")).

*Fanean v. Rite Aid Corporation of Delaware*[40] supports its assertion that Mr. Spence owed a duty to Michael. Not so.[41]

Rite Aid's superficial discussion of "duty" in an attempt to concoct one for Mr. Spence is of little assistance here. Some courts have determined that parties within certain special relationships owe each other a duty to avoid negligently inflicting emotional distress on each other.[42] But there is no general duty to avoid causing another emotional distress.[43] And this Court will not impose a duty upon parents that would require them to refrain from compassionate or nurturing acts that might cause their children discomfort.

---

[40] 984 A.2d 812 (Del. Super. Ct. 2009).

[41] In *Fanean*, the plaintiff's confidential medical and prescription information was given by a pharmacist to the plaintiff's daughter and future stepson, which "made its way back" to the plaintiff's fiancé and caused her embarrassment. 984 A.2d at 815. This Court found that the complaint properly alleged that the *pharmacy* owed the plaintiff a duty, because the pharmacy voluntarily undertook such duty when it agreed to perform pharmacy services for the plaintiff. *Id.* at 823; *see also Walgreen Co. v. Hinchy*, 21 N.E.3d 99 (Ind. Ct. App. 2014) (where pharmacist gave protected health information to plaintiff's ex-boyfriend and plaintiff brought suit against pharmacist, boyfriend was not joined to suit). Michael's father certainly had not undertaken any such duty toward him.

[42] *See* Jeffrey A. Ehrich, *Negligent Infliction of Emotional Distress: A Case for an Independent Duty Rule in Minnesota*, 37 WM. MITCHELL L. REV. 1402, 1443 n.217 (2011) (discussing the types of contractual relationships giving rise to special relationships that require parties to refrain from negligently inflicting emotional distress upon each other).

[43] *See* John C.P. Goldberg & Benjamin C. Zipursky, *Unrealized Torts*, 88 VA. L. REV. 1625, 1672-76 (2002) (explaining lack of general duty to avoid negligently inflicting emotional distress); *see also Gu v. BMW of North Am., LLC*, 132 Cal. App. 4th 195, 204 (Cal. Ct. App. 2005) ("[T]here is no duty to avoid negligently causing emotional distress to another.").

As well-put by one court: "The experience of emotional trauma is certainly not the only defining characteristic of a family relationship, but it is one of them. Indeed, it is often the price to be paid for being a member of a close family unit."[44]

And so:

> To inject the cold, impersonal logic of the law into such an arena could lead to the destruction of close family relationships . . . [F]amily relationship alone is not a sufficient basis for imposing a duty of care to refrain from negligently causing emotional distress. It is not the province of the law to enforce a code of family or parental responsibility beyond that necessary to protect society from the burden of supporting those unable to support themselves.[45]

Recognition of the duty Rite Aid would posit under these circumstances "would be tantamount to imposing a duty on parents generally to refrain from conduct which would cause emotional distress to their emancipated, adult children."[46] That, this Court will not do.

As his father, Mr. Spence did not owe Michael some general duty to avoid causing him emotional distress. And because Michael himself could not have

---

[44] *Fluharty v. Fluharty*, 59 Cal. App. 4th 484, 495 (Cal. Ct. App. 1997).

[45] *Id.* at 495-96.

[46] *Id.* at 496.

brought a NIED claim against his father, neither can Rite Aid.[47] Consequently, the negligent infliction of emotional distress claim must be **DISMISSED**.

### E. THE THIRD-PARTY COMPLAINT FAILS TO PLEAD A CLAIM OF PROMISSORY ESTOPPEL BECAUSE THERE WAS NO PROMISE MADE BETWEEN MR. SPENCE AND MICHAEL.

As does any other plaintiff, to assert Mr. Spence's potential liability for Michael's promissory estoppel claim, Rite Aid must demonstrate by clear and convincing evidence that: (1) a promise was made; (2) the promisor reasonably expected to induce action or forbearance on the part of the promisee; (3) the promisee reasonably relied on the promise and took action to his detriment; and (4) the promise is binding "because injustice can be avoided only by enforcement of the promise."[48]

Rite Aid fails to plead, nor cannot it make out on the facts pleaded, any of the essential elements of a promissory estoppel claim. Rite Aid has nowhere alleged, either expressly or via incorporation, facts that would allow one to find that Mr. Spence made some enforceable promise to Michael such that he could be liable for promissory estoppel. There is no averment in either the original complaint or third-party complaint that Mr. Spence made a promise he reasonably expected Michael would rely upon in his actions or inactions. It is inconceivable

---

[47] *See* supra, n.14.

[48] *Chrysler Corp. v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1032 (Del. 2003).

under the allegations in one, the other, or both, that Michael relied to his detriment on any such promise from his father. And, for some of the reasons noted earlier, it certainly cannot be said that injustice would result if the promise Rite Aid tries to divine was not enforced. Put simply, Mr. Spence could not be liable to Michael for promissory estoppel under any reasonably conceivable set of circumstances susceptible of proof here. That third-party claim too must be **DISMISSED.**

## V. CONCLUSION

Because Defendants Rite Aid of Delaware, Inc, and Achamma Cherian, Pharm. D., RPH, have failed to (and cannot) plead the requisite elements for the claims they seek to hold Mr. Spence liable for, Mr. Spence's motion to dismiss their third-party complaint is **GRANTED;** all of the Defendants'/Third-Party Plaintiffs' remarkable and futile claims are **DISMISSED.**

**IT IS SO ORDERED.**

_____
**PAUL R. WALLACE, JUDGE**

Original to Prothonotary
cc:    All counsel via File & Serve

-17-