**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

MEGHAN A. ADAMS
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0634

June 30, 2021

Adam F. Wasserman, Esq.
Ciconte Wasserman & Scerba, LLC
1300 N. King Street
P.O. Box 1126
Wilmington, DE 19899

James D. Taylor, Jr., Esq.
Saul Ewing Arnstein & Lehr, LLP
1201 North Market Street
Suite 2300
Wilmington, DE 19801

RE:  *Gina Cantatore v. University of Delaware*
     C.A. No.: N20C-06-241 MAA

Dear Counsel:

This is my decision on the University of Delaware's ("UD" or the "University") motion to dismiss in the above-referenced action. The plaintiff, Gina Cantatore ("Cantatore"), filed suit following her on-campus arrest by Officer Morgan Fountain ("Fountain" or "Officer Fountain") of the Newark Police Department ("NPD"). This serves as a companion opinion to my earlier decision on Officer Fountain's partial motion to dismiss.[1]

---

[1]  *See* C.A. No. N20C-06-241 MAA, Docket ("Dkt.") 39 ("Fountain Opinion").

For the reasons that follow, I conclude that the Amended Complaint[2] fails to state reasonably conceivable claims for negligence, negligent infliction of emotional distress, premises liability, and intentional infliction of emotional distress (Counts I-IV). The University's motion is granted with prejudice.

## I.    Background[3]

On September 14, 2019, Officer Morgan Fountain of the Newark Police Department encountered two UD students on E. Cleveland Avenue.[4] As a result of the encounter, UD's Office of Student Conduct ("OSC") contacted Cantatore by email on September 17, 2019. The following day, Cantatore visited OSC's office to follow up on the email and confirm its legitimacy.[5] Cantatore met with OSC Program Coordinator Vincent Jackson, who let her know that as a result of the September 14, 2019 incident, she was being charged with violations of the University's alcohol and disruptive conduct policies.[6] Though Cantatore was not informed by Jackson that the meeting was the official Pre-Hearing Meeting regarding the incident, he had her fill out a form entitled "Acknowledgment of

---

[2]    *See* Dkt. 23, Amended Complaint ("Am. Compl.").
[3]    For the purposes of this motion, I draw the facts from Cantatore's Amended Complaint.
[4]    Am. Compl. ¶ 8. Officer Fountain identified Cantatore as the UD student who fled. *Id.* ¶ 12.
[5]    *Id.* ¶ 15.
[6]    *Id.* ¶ 17.

Rights and Privacy and Choice of Pre-Hearing Outcome."[7]   Jackson told Cantatore that she could be arrested if she did not fill out the form, but if she signed the form and denied the charges, it could prevent arrest.[8]   He also recommended that Cantatore contact the Newark Police Department at some point.   Finally, Jackson informed Cantatore that a hearing on the school's charges would be held on September 26, 2019, a date selected so Officer Fountain could attend the hearing.[9]

On September 24, 2019, two days before the OSC hearing, Officer Fountain arrested Cantatore outside of her classroom on University of Delaware's campus.[10] Officer A. Burham of the University of Delaware Police Department ("UDPD") accompanied Fountain throughout the process, including assisting Fountain in obtaining Cantatore's class schedule.[11]

Cantatore filed her initial complaint on June 22, 2020.[12]  The University filed a motion to dismiss on September 28, 2020.[13]  The University agreed by stipulation to withdraw its initial briefing, which would be renewed upon the filing of an amended complaint.[14]   Cantatore filed the Amended Complaint on November 24,

---

[7]     *Id.* ¶¶ 18–19.
[8]     *Id.* ¶ 20.
[9]     *Id.* ¶¶ 21, 23.
[10]    *Id.* ¶ 37.
[11]    *Id.* ¶¶ 30–32, 43.
[12]    Dkt. 1, Complaint ("Compl.").
[13]    *See* Dkt. 13.
[14]    *See* Dkt. 21.

2020.[15]  The University filed a subsequent motion to dismiss on December 10, 2020.[16]  Oral argument on the motion was held on March 8, 2021.

## II.   Legal Analysis

On a motion to dismiss, plaintiffs are entitled to "all reasonable factual inferences that logically flow from the particularized facts alleged."[17] The Court "need not, however, give weight to conclusory allegations of fact or law."[18] Conclusory allegations lack specific supporting factual allegations.[19] "A complaint will not be dismissed unless the Court determines that the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[20]  In essence, if a complaint is completely unviable—a determination that may be made as a matter of law or fact—it must necessarily be dismissed.[21]

Rule 9(b) states that "[i]n all averments of fraud, negligence or mistake, the circumstances constituting fraud, negligence or mistake shall be stated with

---

[15]   Dkt. 23.
[16]   Dkt. 28.
[17]   *Brehm v. Eisher*, 746 A.2d 244, 253 (Del. 2000).
[18]   *Gelfman v. Weeden Invs., L.P.*, 792 A.2d 977, 984 (Del. Ch. 2001).
[19]   *See, e.g., Woodwerx, Inc. v. Delaware Dep't of Transp.*, 925 A.2d 505 (Del. 2007) (TABLE).
[20]   *Savor, Inc. v. FMR Corp.*, 2001 WL 541484, at *2 (Del. Super. Apr. 24, 2001), *aff'd*, 812 A.2d 894 (Del. 2002).
[21]   *Id.*

particularity."[22]  The purpose of the Rule's particularity requirement is to: "(1) provide defendants with enough notice to prepare a defense; (2) prevent plaintiffs from using complaints as fishing expeditions to unearth wrongs to which they had no prior knowledge; and (3) preserve a defendant's reputation and goodwill against baseless claims."[23]  Rule 9(b)'s particularity requirement is case-specific.[24]

In her Amended Complaint, Cantatore asserts four claims against UD: negligence (Count I); negligent infliction of emotional distress (Count II); premises liability (Count III); and intentional infliction of emotional distress (Count IV).  In order to prevail on the first three claims, Cantatore must establish that the University owed her a duty, as the claims are all rooted in negligence.[25]  Absent such a duty, Cantatore cannot prove the University was negligent and her claims must fail as a matter of law.  The Court will first address these claims before addressing Cantatore's intentional infliction of emotional distress claim, which requires a showing of extreme and outrageous behavior on the part of the defendant.

---

[22]     Super. Ct. Civ. R. 9(b).

[23]     *In re Benzene Litig.*, 2007 WL 625054, at *6 (Del. Super. Feb. 26, 2007) (citing *Stuchen v. Duty Free Int'l, Inc.*, 1996 WL 33167249, at *5 (Del. Super. Apr. 22, 1996)).

[24]     *Id.* at *6.

[25]     To prove negligent infliction of emotional distress, a plaintiff must show: "(1) negligence causing fright to someone; (2) in the zone of danger; (3) producing physical consequences to that person as a result of the contemporaneous shock." *See Rhinehardt v. Bright*, 2006 WL 2220972, at *5 (Del. Super. July 20, 2006) (citing *Snavely ex rel. Snavely v. Wilmington Med. Ctr., Inc.*, 1985 WL 552277, at *1 (Del. Super. Mar. 18, 1985)).

A. Counts I-III

It is axiomatic under Delaware law that, for a defendant to be held liable in negligence, they must owe a plaintiff a duty of care. As then-Judge Slights eloquently noted in *Doe 30's Mother v. Bradley*, "[r]egardless of how morally, ethically or socially deplorable a defendant's conduct may be viewed by other constituencies, in the eyes of the law, the defendant may not be held to answer in negligence unless and until the court determines, as a matter of law, that the defendant owed a duty of care to the plaintiff."[26] Duty is a question of "whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person."[27] Such a determination is a matter of law and is to be decided by the Court.[28] Delaware law has made clear that the duties owed by universities to students are not limitless.[29]

In this case, Cantatore claims that the University owed her a bevy of duties.[30] She argues that UD's breach of these duties ultimately led to the harm she allegedly suffered due to her arrest by Officer Fountain. Cantatore's Amended Complaint,

---

[26]     *Doe 30's Mother v. Bradley*, 58 A.3d 429, 436 (Del. Super. 2012).
[27]     *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011).
[28]     *Riedel v. ICI Americas Inc.*, 968 A.2d 17, 20 (Del. 2009).
[29]     *See Furek v. Univ. of Delaware*, 594 A.2d 506, 521 (Del. 1991) ("The university is not an insurer of the safety of its students nor a policeman of student morality, nonetheless, it has a duty to regulate and supervise foreseeable dangerous activities occurring on its property.")
[30]     *See* Am. Compl. ¶¶ 59, 65.

however, provides no legal basis for almost all of these alleged duties. As such, the Court confines its analysis to the duty owed by a college to its students as set forth by *Furek v. University of Delaware*, namely as it relates to "the acts of third persons which are both foreseeable and subject to university control."[31] The question for the Court, then, is whether Fountain's on-campus arrest of Cantatore was both foreseeable and subject to UD's control such that UD had a duty to protect Cantatore from it.

Officer Fountain's arrest of Cantatore outside of Cantatore's classroom in the manner in which it transpired was not foreseeable.[32] "If the place or character of [UD's] business, or [its] past experience, is such that [it] should reasonably anticipate careless or criminal conduct on the part of the third persons, either

---

[31] *Furek v. Univ. of Delaware*, 594 A.2d 506, 521 (Del. 1991). Cantatore also claims that she was owed a duty by the University of Delaware under Restatement (Second) § 323, as in *Furek*, which supported a claim under § 323 and on premises liability grounds. *Furek* and its progeny, however, do not stand for the proposition that one is automatically accorded a duty under § 323, even if the alleged harm occurs on campus. *See Doe v. Bradley*, 2011 WL 290829, at *9 (Del. Super. Jan. 21, 2011); *see also Rogers v. Christina Sch. Dist.*, 73 A.3d 1, 9 (Del. 2013); *Rogers v. Delaware State Univ.*, 905 A.2d 747 (Del. 2006) (TABLE). Rather, a claim under § 323 is only viable if the university is aware of and has addressed the danger such that it becomes an assumed duty. Here, there is no such express policy or known danger related to on-campus, outside of the classroom arrests of students. The Court, accordingly, further confines its analysis to the duty owed by a university to students related to acts that are foreseeable and subject to university control.

[32] Throughout her briefing and at oral argument, Cantatore confuses the principles of foreseeability under Restatement (Second) § 344, foreseeability as it pertains to superseding causes, and the role harm plays in the foreseeability analysis.

7

generally or at some particular time, [UD] may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection."[33] Here, there are no facts alleged to suggest that the University of Delaware would "know or have reason to know, from past experience that there [was] a likelihood of conduct" on the part of non-UDPD police officers executing legal arrest warrants that would have been "likely to endanger the safety of the visitor."[34] Unlike *Furek*, nothing in Cantatore's Amended Complaint suggests that the University has any type of assumed duty to protect students from conduct akin to Officer Fountain's arrest of Cantatore.

Fountain's conduct was not subject to the University's control. Officer Fountain had a legal right to execute an arrest warrant for Cantatore anywhere on UD's property.[35] The Court accepts as true Cantatore's allegation that "upon information and belief, NPD will not execute an arrest warrant in UD buildings or

---

[33] Restatement (Second) § 344 cmt. f.

[34] *Id.*

[35] *See* 11 *Del. C.* § 1911(d) ("An 'on-duty' police officer may arrest at any location in the State any person for any offense committed within the jurisdiction of the officer's employing agency and for whose arrest a warrant has been issued. The "on-duty" police officer shall, where acting outside of the officer's jurisdiction, take reasonable measures to notify the primary jurisdictional police agency of the intended time and place of the execution of the arrest warrant."); *see also* 14 *Del. C.* § 5104(b)(3) (noting that the granting of jurisdiction and authority to UD's police department "shall neither reduce nor restrict the jurisdiction of other duly appointed peace officers who are empowered to enforce federal or state laws or applicable county or city ordinances on the property of the University of Delaware.")

8

classrooms without first obtaining permission from UD, or UDPD, or their agents or employees."[36]  This does not, however, suggest that Officer Fountain's actions were subject to UD's control.  Rather, this is more in line with the statutory charge of 11 *Del. C.* § 1911(d) to inform the primary jurisdictional agency about the location of an arrest.  The Court does not accept as true Cantatore's conclusory allegation that "[u]pon information and belief, UD and its agents and employees have control over whether to allow NPD to arrest students in class."[37]

Accordingly, the University did not owe Cantatore any duty related to Officer Fountain's on-campus arrest of Cantatore.   Therefore, Cantatore's negligence, premises liability, and negligent infliction of emotional distress claims are dismissed with prejudice.

B. Count IV

Cantatore's claim against UD for intentional infliction of emotion distress ("IIED") also fails.  In order for a defendant to be held liable for IIED, their "action must be extreme and outrageous and there must be a present physical injury."[38] "Defendant's extreme and outrageous conduct may be intentional or reckless."[39] "The alleged conduct must be behavior that goes beyond all possible bounds of

---

[36]     Am. Compl. ¶ 51.
[37]     Am. Compl. ¶ 52.
[38]     *Rea v. Midway Realty Corp.*, 1989 WL 100452, at *4 (Del. Super. Aug. 23, 1989).
[39]     *Id.*

decency, is atrocious, and utterly intolerable in a civilized community."[40]  The Amended Complaint contains no facts that evince this type of behavior on the part of the University.  As such, this claim is likewise dismissed with prejudice.

**III.  Conclusion**

For the foregoing reasons, the University of Delaware's motion to dismiss is granted with prejudice.

**IT IS SO ORDERED.**

Meghan A. Adams, Judge

cc:  Prothonotary
Timothy S. Martin, Esq. (by File&ServeXpress)
Daryll M. Hawthorne-Searight, Esq. (by File&ServeXpress)

---

[40]  *Khushaim v. Tullow Inc.*, 2016 WL 3594752, at *9 (Del. Super. June 27, 2016) (citing *Spence v. Cherian*, 135 A.3d 1282, 1289 (Del. Super. 2016), *corrected* (May 25, 2016); *Mattern v. Hudson*, 532 A.2d 85, 86 (Del. Super. 1987) (internal quotations omitted)).