# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JEFFREY A. CLOUSER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. N21C-03-166 FWW |
| v. | ) | |
| | ) | |
| LISA MARIE, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: February 3, 2022
Decided: February 14, 2022

*Upon Defendant Lisa Marie's Motion to Dismiss*
**GRANTED.**

## <u>MEMORANDUM OPINION</u>

Jeffrey A. Clouser, 1332 Lovering Avenue, Wilmington, DE, 19806, Plaintiff, *pro se.*

Judy M. Jones, Esquire, PARKOWSKI, GUERKE & SWAYZE, P.A., 1105 North Market Street, 19th Floor, Wilmington, DE, 19801, Attorney for Defendant Lisa Marie.

**WHARTON, J.**

# I.     INTRODUCTION

After an initial false start, *pro se* Plaintiff Jeffrey A. Clouser ("Clouser") filed an Amended Complaint ("AC") enumerating six counts for which he seeks relief: (1) Breach of Oral Contract (Count One); (2) Fraudulent Misrepresentation (Count Two); (3) Tortious Interference with Prospective Business Relations (Count Three); (4) Slander *Per Se* (Count Four) (5) Personal Injury of Mental Suffering and Emotional Distress (Count Five); (5) Identifying Unknown Defendant (Count Six).[1] The AC alleges, *inter alia*, that Marie, a licensed realtor, breached an "implied oral contract" with Clouser to represent him in the purchase of a property at 227 Murphy Road ("the Property") in New Castle County.[2] The other claims flow from, but are collateral to, the alleged breach of the oral contract.[3] The heart of the AC is that Marie, after engaging with Clouser in March 2020 to explore his interest in purchasing the Property abandoned him without notice. As a result, he was unable to bid on the Property which ultimately sold about two months later.

Marie asks the Court to dismiss the AC pursuant to Superior Court Rules 12(b)(6) and/or 12(c).[4] According to her, there was no oral contract between the parties. She simply showed Clouser a few properties and because there was no

---

[1] AC, D.I. 13.
[2] *Id.*
[3] *Id.*
[4] Def.'s Mot. to Dismiss, D.I. 47.

written contract between them as required by law, she was free to disengage from whatever relationship that existed between them at any time. Because she was free to terminate the relationship at any time, the fraudulent misrepresentation claim fails as well. Further, Clouser suffered no damages at all, much less the value of a property he never owned. Next Marie argues that there are no facts alleged to support the tortious interference with business claim, or his claim of mental suffering. Finally, Marie argues that the AC alleges that Marie was the recipient of slanderous comments about Clouser, not the one who made them.

After carefully reviewing the AC and the parties contentions, the Court concludes for the reasons set out below that the AC fails to state a claim upon which relief may be granted and/or Marie is entitled to judgment as a matter of law. The factual allegations set out in the AC simply do not support Clouser's contentions that the parties entered into an enforceable oral contract, that Marie fraudulently misrepresented herself, that she tortiously interfered with his business, that she caused him compensable mental suffering, or that she slandered him. At best, the AC describes a perceived slight when Marie, for whatever reason, ceased showing Clouser potential properties to buy. It then alchemically attempts to transform that slight into a viable lawsuit for money damages. Unfortunately for Clouser, there is simply nothing compensable here.

## II.        FACTS AND PROCEDURAL HISTORY

On Friday, March 13, 2020 Clouser submitted his contact information to an online real estate service expressing an interest in two properties on Murphy Road in North Wilmington.[5]  Marie responded and the two met that same day to view the properties.[6]  After viewing the properties, Marie suggested that Clouser might be interested in seeing a third property located at 227 Murphy Road.[7]  Clouser agreed and the two viewed the Property that same day.[8]  After viewing the Property, Clouser told Marie that he was interested in buying it because it's location suited his planned transition to a home based business and asked if she would represent him in purchasing it.[9]  She agreed and told Clouser she would research other potentially suitable properties as well.[10]  Clouser then told Marie he would like his wife to view the property as soon as possible, preferably within the next two days.[11]  Marie agreed to schedule a weekend showing for Clouser and his wife, but failed to contact Clouser to make arrangements.[12]

---

[5] AC, at ¶ 16, D.I.13.
[6] *Id.,* at ¶¶ 17-18.
[7] *Id*., at ¶ 19.
[8] *Id.,* at ¶¶ 20-23.
[9] *Id.,* at ¶¶ 25-26.
[10] *Id.,* at ¶¶ 27, 30.
[11] *Id.,* at ¶ 32.
[12] *Id.,* at ¶¶ 32-34.

4

The parties then began communicating by text message. On Monday, March 16th, Clouser texted Marie and asked when she would be in North Wilmington.[13] Marie responded that she would be back at work on Friday the 20th.[14] On March 19th, the Governor declared a state of emergency due to the COVID-19 pandemic and closed many businesses.[15] Although the Governor did not close the real estate business, he did place restrictions on showing properties.[16] The Property sold on May 18, 2020, apparently without further communication between the parties.[17]

Clouser's initial Complaint was filed on March 17, 2021, listing four "John Doe" defendants in addition to Marie.[18] The Court dismissed the Complaint only as to the unnamed "John Doe" defendants on March 25th.[19] On April 29, 2021, Clouser filed the AC.[20] Marie answered *pro se* on May 18th.[21] After meeting with both unrepresented parties on October 25, 2021, the Court issued a Trial Scheduling Order.[22] On December 8, 2021, counsel entered her appearance for Marie.[23] Marie

---

[13] *Id.,* at ¶ 36.
[14] *Id.,* at ¶ 37.
[15] *Id.,* at ¶ 39.
[16] *Id.,* at ¶¶ 40-41.
[17] *Id.,* at ¶ 46.
[18] Compl., D.I. 1.
[19] D.I. 11.
[20] AC, D.I. 13.
[21] Ans., D.I. 19.
[22] D.I. 22.
[23] D.I. 35.

moved to dismiss on January 7, 2022[24] and Clouser responded in opposition on February 3rd.[25]

## III.    THE PARTIES' CONTENTIONS

In her Motion to Dismiss (the "Motion"), Marie argues that the AC does not support the allegation of an oral contract between the parties – only that Marie showed the property to Clouser one time, after which Marie had no further obligation to maintain any agency relationship with him.[26] According to Marie, at best, the AC alleges that Clouser was "interested" in the property, that he "potentially" wanted to purchase the property if his wife approved, and that Marie was going to show him other commercial properties.[27] The AC does not allege that Clouser instructed Marie to make an offer for the property on his behalf, or even that he was prepared to make one.[28] Under 24 *Del. C.* § 2930(b), a buyer does not owe a fee to an agent absent a written contract, and therefore there was no consideration for any implied oral contract.[29] Moreover, Marie contends that Clouser suffered no financial damages. He did not expend any funds and should not receive the fair market value of a property for free.[30]

---

[24] Def.'s Mot. to Dismiss, D.I. 47.
[25] Pl.'s Opp., D.I. 58.
[26] *Id.*
[27] *Id.,* at ¶ 7.
[28] *Id.*
[29] *Id.,* at ¶ 8.
[30] *Id.,* at ¶ 9.

As to the remaining counts, Marie argues that Clouser fails to allege any false representation she made upon which he detrimentally relied. Instead, he relies on the assertion that Marie terminated an agreement to represent him.[31] No specific facts support his claims of tortious interference with prospective businesses relations or mental suffering and emotional distress.[32] The slander *per se* claim fails because Clouser never alleges that Marie said anything slanderous, only that some unnamed person said something slanderous to her.[33]

In response, Clouser argues that he has adequately pled the existence of an oral contract with Marie for her to represent him as his agent in his effort to buy 227 Murphy Road.[34] He maintains that the oral contract is evidenced both by the conduct of the parties and Marie's express agreement to represent him.[35] Consideration was to be Marie's commission for Clouser's purchase of the property.[36] Regarding damages, Clouser's position is that he should not be punished financially for the loss of an investment opportunity because of his reliance on Marie.[37]

---

[31] *Id.,* at ¶ 11.
[32] *Id.,* at ¶¶ 12-14.
[33] *Id.,* at ¶¶ 15-18.
[34] Pl.'s Opp., at ¶ 4, D.I. 58.
[35] *Id.,* at ¶¶ 4-6.
[36] *Id.,* at ¶ 7.
[37] *Id.,* at ¶ 8.

Clouser argues that Marie fraudulently misrepresented herself as a real estate agent acting in his best interests.[38] Further, Marie's text messages to him meet the particularity requirement for pleading fraud.[39] He responds to Marie's argument that no facts were pled supporting his claim of tortious interference with prospective business relations by emphasizing that the AC alleges that Marie knew he planned to use the property for commercial purposes.[40] Regarding his slander *per se* claim, Clouser argues that no reasonable realtor would abandon an "easy" commission. If Marie engaged in conversations with third parties she is liable for slander *per se*.[41] Finally, Clouser acknowledges he did not plead any specifics of his mental suffering and emotional distress, but Marie is on sufficient notice of the claim and the basis for it.[42]

## IV. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Superior Court Rule 12(b)(6) will not be granted if the "plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[43] The Court's review is limited to the well-pled allegations in the complaint.[44] In ruling on

---

[38] *Id.,* at ¶ 9.
[39] *Id.*
[40] *Id.,* at ¶¶ 11-12.
[41] *Id.,* at ¶ 13.
[42] *Id.,* at ¶ 14.
[43] *Browne v. Robb*, 583 A.2d 949, 950 (Del. 1990).
[44] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005).

8

a 12(b)(6) motion, the Court "must draw all reasonable factual inferences in favor of the party opposing the motion."[45] Dismissal is warranted "only if it appears with reasonable certainty that the plaintiff could not prove any set of facts that would entitle him to relief."[46]

Pursuant to Super. Ct. Civ. R. 12(c), "[a]fter the pleadings are closed but within such time so as not to delay the trial, any party may move for judgment on the pleadings."[47] Upon considering such a motion, the Court must accept all well-pled facts as true and must construe all reasonable inferences in favor of the non-moving party.[48] The motion may only be granted where the Court is satisfied that "no material issue of fact exists and the movant is entitled to judgment as a matter of law."[49]

## V. DISCUSSION

In Section V.A. below, discussing Clouser's breach of contract claim, the Court finds that the AC fails to state a claim that Clouser and Marie entered into binding oral contract. Some other claims allege and are premised to a greater or lesser degree on the existence of an oral contract. The absence of a properly pled

---

[45] *Id.*
[46] *Id.*
[47] Super. Ct. Civ. R. 12(c).
[48] *Silver Lake Office Plaza, LLC v. Lanard & Axilbund, Inc.*, 2014 WL 595378, at *6 (Del. Super. Ct. Jan. 17, 2014).
[49] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).

oral contract is fatal to those claims as well.  Nevertheless, each of them fails independently for the reasons set out in sections V.B., V.C., and V.E. below. Section V.D. deals with Clouser's slander *per se* claim and is independent from his breach of contract claim.  Further, because there appear to be no material issues of fact (as opposed to Clouser's incorrect legal conclusions) the Court finds that Marie is entitled to judgment as a matter of law based on those facts.

**A.      Count One - Breach of Oral Contract Fails to Allege Necessary Elements of a Binding Oral Contract.**

In the AC, Clouser appears to use the terms "oral contract" and "implied oral contract" interchangeably, but they are not the same.  "An implied contract is one inferred from the conduct of the parties, though not expressed in words.  The parties' intent and mutual assent to an implied in-fact-contract is proved through conduct rather than words."[50]  An express contract is arrived at by language and an implied-in-fact contract by the actions of the parties.[51]  Thus, the term "implied oral contract" is an oxymoron.  In order to state a claim, the AC must allege either an implied-in-fact contract or an oral contract.

It is clear to the Court that the AC fails to state a claim for an implied-in-fact contract.  Just the opposite.  The AC alleges that after initially showing Clouser the

---

[50] *Capital Management Co. v. Brown,* 813 A.2d 1094, 1098 (Del. 2002).
[51] *Phillips v. Wilkes, Lukoff & Bracegirdle, LLC*, 2014 WL 4930693, at *3 (Del. 2014).

10

Property, Marie abandoned any efforts on his behalf. That abandonment is the gravamen of the AC. An allegation that Marie did nothing on Clouser's behalf cannot be evidence that her conduct infers her assent to an implied-in-fact contract to so something on his behalf. Therefore, in order to state a claim, the AC must allege a valid oral contract.

Of course, outside of the Statute of Frauds, which is inapplicable here, an oral contract, is perfectly enforceable once established. "It is the blackest of black letter law that an enforceable contract requires an offer, acceptance, and consideration."[52] Implicit in that formulation is a requirement that the terms of a contract be sufficiently definite.[53] As alleged in the AC, Marie verbally accepted Clouser's offer to retain her to represent him in his efforts to buy the Property.[54] But, that agreement appears to be the end of any progress the parties made toward entering into a contract, either written or oral. The AC identifies no contract terms other than that Marie would represent Clouser in his attempt to buy the Property. Clouser acknowledges that he understood that Marie would prepare a written contract formalizing their relationship.[55] Indeed, pursuant to 24 *Del. C.* § 2930(a) Clouser

---

[52] *Cigna Health and Life Insurance Company v. Audax Health Solutions, Inc.,* 107 A.3d 1082, 1088 (Del. Ch. Nov. 14, 2014).
[53] *Handler Corporation v. West American Insurance Company,* 2022 WL 175769 at *2 (Del. Super. Ct. Jan. 19, 2022).
[54] Pl.'s Opp., at ¶ 4, D.I. 58.
[55] *Id.,* at ¶ 6.

11

had no obligation to pay compensation to Marie absent a written contract.[56] That section states, "Nothing in this chapter obligates a buyer…to pay compensation to a broker…unless that party has entered into a written brokerage agreement with the broker…specifying the compensation terms." As a result, there was no consideration for the putative oral contract, not even the speculative consideration Clouser claims Marie would have received if he were able to buy the Property. At most, the AC alleges a preliminary agreement on Marie's part to assist Clouser in buying the Property. Thus, it is clear from the AC that the parties (or certainly at least Marie) understood that the terms of the proposed representation agreement would be reduced to writing before it was complete and binding on them.

Because the Court has determined that no oral contract existed, it follows that there was no breach of an oral contract. However, even if there was an oral contract between Clouser and Marie, the breach of contract claim still would fail because Clouser suffered no damages. The elements of a breach of contract claim are: (1) a contract existed between the parties; (2) the defendant breached an obligation imposed by the contract; and (3) the plaintiff suffered damages as a result of the breach.[57] As Marie points out in the Motion, Clouser did not expend any funds – he

---

[56] 24 *Del. C.* § 2930(a).
[57] *Levy Family Investors, LLC v. Oars + Alps LLC,* 2022 WL 245543, at *9 (Del. Ch. Jan. 27, 2022).

12

did not lose a deposit, nor did he pay Marie anything to show him properties.[58]  At most, Clouser lost the opportunity to make an offer to buy the Property.  Whether his offer would have been successful is unknown, as is the value of his missed opportunity.  Instead, Clouser claims damages in the amount of $305,000, which apparently represents the sale price of the Murphy Road property, plus additional compensation for the property's appreciation.  This damages claim is fanciful.  Clouser still possesses all of the funds he would have expended in purchasing the Property.  He has no out-of-pocket damages but seeks to be compensated in an amount equal to the fair market value of a property he never owned.  In effect, Clouser wants to be paid for losing something he never had.  Such windfall damages are not an appropriate measure of a legitimate loss.

## B.    Count Two - Fraudulent Misrepresentation Fails to State a Claim.

To prevail at trial on a fraud claim, a plaintiff must prove by a preponderance of the evidence that a defendant engaged in fraudulent conduct.[59]  "The general elements of common law fraud under Delaware law are: (1) defendant's false representation, usually of fact, (2) made either with knowledge or belief or with reckless indifference to its falsity, (3) with an intent to induce the plaintiff to act or refrain from acting, (4) the plaintiff's action or inaction resulted from a reasonable

---

[58] Def.'s Mot. to Dismiss, at ₱ 9, D.I. 48.
[59] *George v. A. C. & S. Co.*, 1988 WL 22365, at *1 (Del. Super. Ct. Feb. 16, 1988).

reliance on the representation, and (5) reliance damaged the [plaintiff]."[60] Additionally, when alleging fraud, "the circumstances constituting fraud shall be stated with particularity."[61]

A fraud claim may not be an improperly "bootstrapped" breach of contract claim, under the "Anti-Bootstrapping Rule." What constitutes improper bootstrapping is not entirely clear.[62] However, a reasonable statement of the Rule is that it generally applies when a plaintiff attempts to transmute a breach of contract claim into a fraud claim by adding conclusory allegations to its breach of contract claim.[63] It bars a fraud claim where the plaintiff merely sprinkles the complaint with terms like "fraudulently induced," or alleges that the defendant never intended to comply with the agreement at issue at the time the parties entered into it.[64]

Clouser alleges that Marie "fraudulently misrepresented herself as his realtor when she unilaterally refrained from working on his behalf without notifying him of her decision."[65] He also alleges that Marie's agreement to represent him "was afterwards unduly influenced by the slander *per se* of Plaintiff by, the as of yet, Unknown Defendant(s) John Doe, when Defendant unilaterally refrained from

---

[60] *Browne v. Robb*, 583 A.2d 949, 955 (Del. 1990).
[61] Super. Ct. Civ. R. 9(c).
[62] *Levy,* at *7.
[63] *Swipe Acquisition Corporation v. Krauss, et al.,* 2020 WL 5015863, at *11 (Del. Ch. Aug. 25, 2020).
[64] *Id.,* at 8 (internal quotes omitted).
[65] AC, at ‖ 96.

14

representing plaintiff as a buyer in a real estate transaction without informing Plaintiff."[66]  In other words, the AC alleges that sometime after Marie told Clouser she would be his realtor she was induced by someone  whose identity is unknown to terminate her representation.  It follows that Marie's statement that she would be his realtor was not false when she made it.  Therefore, the allegations of the AC establish that she did not fraudulently misrepresent herself.

Further, the fraudulent misrepresentation count is an improper attempt to bootstrap a breach of contract allegation into a fraud claim.  The fraudulent misrepresentation claim really is nothing more than the breach of contract claim with the term "fraudulent misrepresentation" thrown in a few times.

**C.    Count Three - Tortious Interference with Prospective Business Relations Fails to State a Claim**.

A properly stated claim for tortious interference with prospective business relations must allege: (1) a reasonable probability of a business opportunity; (2) intentional interference by a defendant with that opportunity; (3) proximate causation; and (4) damages.[67]  The allegations in the AC specific to this claim simply repeat Clouser's mantra the Marie breached an oral contract to represent him as his realtor in his attempt to purchase the Property by abandoning any efforts on his

---

[66] *Id.*, at ¶ 101.
[67]  *Beard Research, Inc. v. Kates,* 8 A.3d 573, 607-8 (Del. Ch. 2020)

15

behalf.[68]  Incorporating by reference the previous allegations in the AC only bolsters the claim to the extent that Marie knew Clouser intended to use the Property for business purposes.  Nowhere does the AC identify a reasonable probability of any specific business opportunity with which Marie allegedly intentionally interfered or how her alleged breach of an oral contract was the proximate cause of the loss of any specific prospective business opportunity.  The AC also fails to allege any damages particular to a specific business opportunity.  The AC fails to allege any of the elements of a tortious interference of a prospective business opportunity claim.

**D.    Count Four - Slander *Per Se* Fails to State a Claim.**

At common law, defamation consists of the "twin torts" of libel and slander, with libel being written defamation and slander being oral defamation.[69]  Clouser alleges slander *per se*.  The four types of slander *per se* are: (1) maligning one in a trade, business, or profession; (2) imputing a crime; (3) implying one has a loathsome disease; or (4) imputing unchastity to a woman.[70]  The AC generically alleges the first three categories without specifying any specific slanderous statement.[71]  More fundamentally, however, this count must be dismissed because the AC alleges that some unknown person uttered the slanderous statement(s) to

---

[68] AC, at ⁋⁋ 95-104.
[69] *Spence v. Funk,* 396 A.2d 967, 970 (Del. 1978).
[70] *Optical Air Data Systems, LLC v. L-3 Communications Corporation,* 2019 WL 328429, at *7 (Del. Super. Ct. Jan. 23, 2019).
[71] AC, at ⁋⁋ 122-123.

Marie.[72]  Making the listener liable for the slander of the speaker turns the concept of slander on its head.

**E.     Count Five - Personal Injury of Mental Suffering and Emotional Distress Count Fails to State a Claim.**

Clouser alleges in this count that Marie caused him mental suffering and emotional distress as a result of the conduct alleged in the preceding counts.  Because those counts fail to state claims upon which relief can be granted, this claim does as well.[73]  To the extent Clouser is attempting to make out a claim of intentional infliction of emotional distress, the AC fails.  Such a claim requires that a defendant "by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another."[74]  The AC fails to allege any conduct that is close to being extreme or outrageous.

**F.     Count Six – Identifying Unknown Defendant Fails to State a Claim.**

This count seeks the identity of an unknown person whom Clouser alleges dissuaded Marie from continuing to work with him by slandering him to her.[75]  To the extent such person exists, Clouser had the opportunity through discovery to

---

[72] The Count also is defective because it does not identify the slanderous statement(s).

[73] AC, at ⁋⁋ 137-142.

[74] *Spence v. Cherian,* 135 A. 3d 1282, 1288, 89 (Del. Super. Ct. 2016) (quoting the Restatement (Second) of Torts, § 46).

[75] AC, at ⁋⁋ 146-154.

learn that person's identity.  Count Six does not state a valid claim form relief and is not a proper vehicle for obtaining the information he seeks.

**THEREFORE**, for the reasons set forth above, Defendant Lisa Marie's Motion to Dismiss is **GRANTED.**  The Amended Complaint is **DISMISSED PREJUDICE.**

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.

18